Oral Argument Not Yet Scheduled

No. 21-5275

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

N.S., individually and on behalf of all others similarly situated,
*Plaintiff-Appellee*,

*v.*

Robert A. Dixon, United States Marshal,
District of Columbia (Superior
Court), in his official capacity,
*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 20-CV-101
The Hon. Royce C. Lamberth

## BRIEF FOR THE APPELLANT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director

ELISSA P. FUDIM
Trial Attorney
Office of Immigration Litigation -
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20530

*Attorneys for Defendant-Appellant*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

**(A)    Parties and Amici**

The only parties in this case are those listed in the caption. Appellants are not aware of any amici.

**(B)    Rulings under Review**

The rulings under review are the opinion entered on October 7, 2021 (Dkt. No. 100), and the permanent injunction order entered on September 30, 2021 (Dkt. 99).

**(C)    Related Cases**

This case has not previously been before this Court, and Appellant is not aware of any related cases.

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES** ........i

**GLOSSARY OF ABBREVIATIONS** ....................................................xi

**INTRODUCTION** .......................................................................1

**STATEMENT OF JURISDICTION** ..................................................5

**STATUTES AND REGULATIONS.** ..................................................5

**STATEMENT OF THE ISSUES** ......................................................5

    **I.  Whether the district court erred in granting permanent injunctive relief affecting the government's implementation of, and ability to carry-out, 8 U.S.C. §§ 1226(c) and 1331(a), in contravention of 8 U.S.C. § 1252(f)** ........5

    **II.  Whether the district court erred in holding that the USMS lacked authority to arrest and detain a noncitizen past the time when he or she would otherwise be released from criminal custody in reliance on an ICE detainer and arrest warrant** ................5-6

    **III. Whether the district court otherwise erred in granting permanent injunctive relief** ........6

**STATEMENT OF THE CASE** ..........................................................6

**SUMMARY OF ARGUMENT** ..........................................................17

**STANDARD OF REVIEW** ..............................................................20

**ARGUMENT** ..............................................................................21

**I.   8 U.S.C. § 1252(f) precluded the district court from issuing the permanent injunction** ........21

**II.  The Court erred in finding USMS lacks authority to briefly hold noncitizens past their release from criminal custody** ........26

**III.    The injunction was improper under traditional equitable principles ...41**

**CONCLUSION....................................................................................45**

**CERTIFICATE OF COMPLIANCE ....................................................**

**CERTIFICATE OF SERVICE ............................................................**

## TABLE OF AUTHORITIES

### CASES

*Abel v. United States*,
    362 U.S. 217 (1960) ........................................................ 38, 39, 40

*Adirondack Med. Ctr. v. Sebelius*,
    740 F.3d 692 (D.C. Cir. 2014)..............................................34

*Allied–Signal, Inc. v. U.S. Nuclear Reg. Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993)..............................................41

*Am. Fed'n of Musicians v. Nat'l Lab. Rels. Bd.*,
    12 F.4th 778 (D.C. Cir. 2021) ..............................................30

*Am. Hosp. Ass'n v. Azar*,
    983 F.3d 528 (D.C. Cir. 2020)..............................................30

*Arizona v. United States*,
    567 U.S 387 (2012). ......................................................6, 7

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015)..............................................44

*Biden v. Texas*,
    142 S.Ct. 2528 (2022) .................................................. 23, 24

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
    419 U.S. 281 (1974) ......................................................32

*Canonsburg Gen. Hosp. v. Burwell*,
    807 F.3d 295 (D.C. Cir. 2015)..............................................32

*Chung Young Chew v. Boyd*,
    309 F.2d 857 (9th Cir. 1962)..............................................7

*City of El Cenizo v. Texas*,
    890 F.3d 164 (5th Cir. 2018)..............................................39

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..................................................... 20, 44

iv

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...............................................................44

*Compton v. Alabama*,
214 U.S. 1 (1909) ...................................................................39

*Detweiler v. Pena*,
38 F.3d 591 (D.C. Cir. 1994)...................................................34

*Ex parte Korner*,
123 P.2d 111 (Cal. Ct. App. 1942) ............................................7

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ................................................................31

*Garland v. Aleman Gonzalez*,
142 S. Ct. 2057 (2022) ........................................ 4, 21, 23, 24, 25

*Gonzales v. Collins*,
21 F.3d 1108 (5th Cir. 1994) ...................................................42

*Gonzalez v. United States Immigr. & Customs, Enf't*,
975 F.3d 788 (9th Cir. 2020).....................................................40

*Henderson v. Simms*,
223 F.3d 267 (2000) ...............................................................41

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ....................................................... 3, 25

*Kellmer v. Raines*,
674 F.3d 848 (D.C. Cir. 2012).................................................20

*King v. United States*,
130 Fed. Cl. 476 (2017)...........................................................28

*Knowlin v. Thompson*,
207 F.3d 907 (7th Cir. 2000) ...................................................42

*Lopez v. INS*,
   758 F.2d 1390 (10th Cir. 1985) ............................................................39

*Lopez-Lopez v. Cnty. of Allegan*,
   321 F. Supp. 3d (W.D. Mich. 2018) ......................................................40

*Maphorisa v. Delaney*,
   No. CIV.A. 09-2689, 2010 WL 4321031 (E.D. Pa. Nov. 1, 2010) ....................43

*Nken v. Holder*,
   556 U.S. 418 (2009) ..............................................................................41

*N.S. v. Hughes*,
   335 F.R.D. 337, 345-46 (D.D.C. May 7, 2020) ....................................13

*O'Hara v. District No. 1–PCD*,
   56 F.3d 1514 (D.C.Cir.1995) ................................................................20

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..............................................................................44

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*,
   474 U.S. 34 (1985) ..................................................................................8

*Reno* v. *American-Arab Anti-Discrimination Committee*,
   525 U.S. 471 (1999) ..............................................................................25

*Rocky Mountain Health Maintenance Org., Inc. v. Price*,
   297 F. Supp. 3d 152 (D.D.C. 2018) ................................................ 19, 32

*Rosario v. New York City*,
   No. 12 CIV. 4795 PAE, 2013 WL 2099254 (S.D.N.Y. May 15, 2013) .............43

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ..............................................................................30

*Samoya-Martinez v. Holder*,
   558 F.3d 897 (9th Cir. 2009) ................................................................36

*Samson v. California*,
   547 U.S. 843 (2006) ..............................................................................29

*SEC v. Chenery Corp.*,
 318 U.S. 80 (1943) ............................................................. 13, 16, 29, 30

*Shadwick v. City of Tampa*,
 407 U.S. 345 (1972) .............................................................................39

*Shea v. Director, Office of Workers' Comp. Programs, United States Dep't of Labor*,
 929 F.2d 736 (D.C. Cir. 1991).............................................................19

*Sherman v. U.S. Parole Comm'n*,
 502 F.3d 869 (9th Cir. 2007) ...............................................................41

*Sierra Club v. FERC*,
 827 F.3d 36 (D.C. Cir. 2016)................................................................32

*Slavik v. Miller*,
 89 F. Supp. 575 (W.D. Pa. 1950) ...........................................................7

*United States ex rel. Randazzo v. Follette*,
 418 F.2d 1319 (2d Cir. 1969) ...............................................................41

*United States v. Giordano*,
 416 U.S. 505 (1974) .............................................................................33

*United States v. Lucas*,
 499 F.3d 769 (8th Cir. 2007) ....................................................... 38, 39

*United States v. Philip Morris USA Inc.*,
 566 F.3d 1095 (D.C.Cir. 2009)............................................................20

*United States v. Texas*,
 143 S. Ct 1964 (2023). .......................................................................30

*Winter v. NRDC*,
 555 U.S. 7 (2008) ................................................................................41

## STATUTES

6 U.S.C. § 552(a)(1) ................................................................................28

8 U.S.C. § 1101(a)(18) ...........................................................................38

8 U.S.C. § 1103 ............................................................................... 30, 33

8 U.S.C. § 1103(a) ....................................... 10, 16, 18, 27, 28, 29, 31, 32, 33, 36

8 U.S.C. § 1103(a)(4) .................................................................. 4, 18, 26

8 U.S.C. § 1103(4) ..................................................................................34

8 U.S.C. § 1221 ......................................................................................17

8 U.S.C. § 1225(b)(2)(C) .......................................................................24

8 U.S.C. § 1226 ....................................................... 1, 3, 4, 8, 21, 23, 25, 37, 42

8 U.S.C. § 1226(a) ...................................................................... 6, 21, 22, 38

8 U.S.C. § 1226(c) ................................................................................ 5, 21

8 U.S.C. § 1226(c)(1) ...............................................................................6

8 U.S.C. § 1229(a) ..................................................................................24

8 U.S.C. § 1231 ........................................................................ 3, 17, 21, 22, 23

8 U.S.C. § 1231(a) ............................................................................ 2, 5, 8

8 U.S.C. § 1231(a)(2) ..............................................................................22

8 U.S.C. § 1231(a)(6) ..............................................................................23

8 U.S.C. § 1232 ......................................................................................23

8 U.S.C. § 1252(f) ......................................................................... 5, 21, 23

8 U.S.C. § 1252(f)(1) ......................................................................... 21, 25

8 U.S.C. § 1357 ................................................................ 35, 37, 42

8 U.S.C. § 1357(a) ....................................................................15

8 U.S.C. § 1357(a)(1) ..................................................................6

8 U.S.C. § 1357(d) .....................................................................8

8 U.S.C. § 1983 ........................................................................42

18 U.S.C. § 2516(1) ...................................................................33

18 U.S.C. § 3053 .......................................................................9

28 U.S.C. § 504 .......................................................................26

28 U.S.C. § 509 ............................................. 10, 16, 27, 28, 30, 32, 33

28 U.S.C. § 510 ......................................... 10, 27, 26, 28, 30, 32, 33, 36

28 U.S.C. § 561 .......................................................................11

28 U.S.C. § 561(a) .....................................................................9

28 U.S.C. § 561(b) ...................................................................8, 9

28 U.S.C. § 561(c) ....................................................................11

28 U.S.C. § 566 ............................................................. 10, 14, 27

28 U.S.C. § 566(a) .....................................................................9

28 U.S.C. § 566(b) ....................................................................11

28 U.S.C. § 569 .......................................................................11

28 U.S.C. § 1291 .......................................................................5

28 U.S.C. § 1331 .......................................................................5

28 U.S.C. § 561 .........................................................................9

28 U.S.C. §§ 561–569 ..................................................................................11

# FEDERAL REGULATIONS

8 C.F.R. § 236 ...........................................................................................22

8 C.F.R. § 236.1 ..........................................................................................2

8 C.F.R. § 236.1(b) ....................................................................................38

8 C.F.R. § 236.1(b)(1) ........................................................................ 22, 38

8 C.F.R. § 241.2 ...........................................................................................2

8 C.F.R. § 264.1(f) .....................................................................................18

8 C.F.R. § 287 ...........................................................................................37

8 C.F.R. § 287.5 .................................................................. 2, 22, 34, 35, 36

8 C.F.R. § 287.5(c)(1) ........................................................................ 34, 35

8 C.F.R. § 287.5(c)(1)(i) ............................................................................35

8 C.F.R. § 287.5(c)(1)(vii) .........................................................................35

8 C.F.R. § 287.5(e)(3) ........................................................................ 34, 35

8 C.F.R. § 287.5(e)(3)(i) ............................................................................35

8 C.F.R. § 287.5(e)(3)(vii) ........................................................................ 35

8 C.F.R. § 287.7 ................................................................... 1, 14, 22, 29

8 C.F.R. § 287.7(a) ................................................................................ 8, 13

28 C.F.R. § 0.111(a) ............................................... 9, 10, 14, 36, 37, 38, 40

28 C.F.R. § 0.15(a) .............................................................................. 10, 26

## D.C LOCAL RULES

D.C. Code § 11–1729 ....................................................................................11

## FEDERAL REGULATIONS

59 Fed. Reg. 42,406 .....................................................................................35

## PUBLIC LAW

Pub. L. No. 99-570 .........................................................................................7

Pub. L. No. 107-292 ......................................................................................28

Pub. L. No. 100690 .......................................................................................11

## <u>GLOSSARY OF ABBREVIATIONS</u>

Department of Homeland Security ..........................................................(DHS)
Immigration and Customs Enforcement...................................................(ICE)
Immigration and Nationality Act .............................................................(INA)
The United States Marshals Service.................................(USMS or Marshals Service)

## INTRODUCTION

The federal government possesses broad power over immigration, but enforcing the laws concerning removable noncitizens is a formidable challenge. To meet that challenge, the federal government coordinates among its agencies and works with state and local governments. These cooperative efforts are critical to enabling the federal government to identify and remove the hundreds of thousands of noncitizens who violate immigration laws each year, including many thousands convicted of serious crimes, an undertaking that fulfills the Executive Branch's responsibility to enforce the statutes Congress enacted and to protect public safety.

Historically, the primary means of cooperation to enforce federal immigration law has come through immigration detainers—requests that federal, state, and local law-enforcement agencies notify the Department of Homeland Security (DHS) that criminal noncitizens believed to be removable from the United States are scheduled for release from custody and facilitate their transfer to DHS. A detainer is based on an assessment by Immigration and Customs Enforcement (ICE) that probable cause exists to believe that the subject is a removable noncitizen. 8 C.F.R. § 287.7. The federal government has relied on detainers across Administrations for years. ICE detainers are accompanied by a signed administrative warrant of arrest or warrant of removal issued under 8 U.S.C. §§

1

1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4-2.6.[1] That administrative warrant is issued by an ICE officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5.

The United States Marshals Service (USMS or Marshals Service)—the oldest federal law enforcement agency in the country with wide-ranging responsibilities and the broadest arrest authority—is one agency that ICE relies upon to execute detainers and administrative warrants. That cooperation includes the cooperation of the presidentially appointed U.S. Marshal for the Superior Court of the District of Columbia, who briefly holds removable noncitizens following their release from custody on criminal charges so that ICE may take custody in the District of Columbia.

On October 7, 2021, on behalf of a certified class[2], the district court entered a permanent injunction that prohibits the USMS and its agents, subordinates, and employees from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations including based on requests from ICE to do so premised on federal immigration arrest

---

[1]  https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf; *see also* https://www.ice.gov/features/detainers

[2] The class is "[a]ll indigent criminal defendants in the Superior Court for the District of Columbia: (1) who were, are, or will be detained by officers of the United States Marshals Service for suspected immigration violations, and (2) as to whom ICE has not effectuated a warrant of removal/deportation (Form I-205)

warrants. JA 144. The Court held that neither the Immigration and Nationality Act (INA), nor any implementing regulation, authorizes the USMS to arrest and detain noncitizens for civil immigration violations. JA 151-54. The Court further held that the Attorney General has never properly delegated to the USMS the authority to detain a noncitizen past the time when he or she would otherwise be released from criminal custody. JA 154-58.  The district court's decision is wrong and should be reversed.

*First*, the Court lacked any authority to issue an injunction that by its plain terms interferes with how ICE or the federal government implement their statutory warrant and arrest authorities. Section 1252(f)(1) of Title 8 provides that "…no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1231], other than with respect to the application of such provisions to an individual alien against whom proceedings under [those provisions] have been initiated." This provision is an unequivocal bar on "classwide injunctive relief against the operation of §§ 1221-123[1]." *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018). The classwide injunction issued by the district court violates Section 1252(f)(1) because it restrains ICE's implementation of its arrest and detention authority under Sections 1226 and 1231 to arrest and detain removable noncitizens by preventing ICE from relying upon the USMS to

and/or has not obtained an order for deportation or removal." JA 117-118.

effect detainers and execute warrants with respect to a class of people, and preventing the USMS from cooperating in that endeavor, both of which are covered by Sections 1226 and 1231. *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022).

*Second*, the district court erred in concluding that the USMS lacked authority to detain removable individuals at ICE's request based on federal immigration detainers and warrants. The INA provides that immigration "powers, privileges, or duties" may be broadly delegated. 8 U.S.C. § 1103(a)(4). Invoking that authority, the Attorney General delegated such authority to the USMS in 1996 and 2002. JA 69-70, 75-76. Both orders authorized the USMS to perform the functions of immigration officers; the first explicitly included the authority to "maintain custody" of noncitizens, and the second clarified that this delegation included the authority to make "actual apprehensions." JA 69-70, 75-76. Both delegations encompass USMS's practice of briefly holding removable noncitizens following their release from criminal custody if ICE provides a detainer and arrest warrant.

Third and finally, even if the district court had authority to issue an injunctive remedy, the court clearly erred in issuing that remedy because the class members did not suffer an irreparable injury. They do not have a legal right *not* to be detained. Indeed, they do not challenge the fact that they were detained, but

only the *identity* of the federal official detaining them. That sort of harm is too insignificant to warrant a permanent injunction precluding their arrest and detention entirely. Additionally, the court improperly ordered prospective injunctive relief because the named plaintiff did not demonstrate a likelihood of future injury.

The Court should therefore reverse the district court's decision and vacate the permanent injunction.

## STATEMENT OF JURISDICTION

Plaintiffs invoked 28 U.S.C. § 1331 in the district court as the basis for subject-matter jurisdiction. JA 11. Defendant-Appellant did not contest jurisdiction.  Defendant filed a notice of appeal on November 24, 2021. JA 162. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATUTES AND REGULATIONS

Relevant statutes and regulations are included in an addendum.

## STATEMENT OF THE ISSUES

I.     Whether the district court erred in granting permanent injunctive relief affecting the government's implementation of, and ability to carry-out, 8 U.S.C. §§ 1226(c) and 1331(a), in contravention of 8 U.S.C. § 1252(f).

II.     Whether the district court erred in holding that the USMS lacked authority to arrest and detain a noncitizen past the time when he or she would

otherwise be released from criminal custody in reliance on an ICE detainer and arrest warrant.

III.    Whether the district court otherwise erred in granting permanent injunctive relief.

## STATEMENT OF THE CASE

Legal Background. Under the INA, the federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394. This power includes the authority of DHS and its subcomponent ICE to interview, arrest, and detain removable noncitizens. *See* 8 U.S.C. § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests); 8 U.S.C. § 1226(a) (Secretary of Homeland Security may issue administrative arrest warrants and arrest and detain aliens pending removal decision); *id*. § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when "released"); *id*. § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed); *id*. § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).

Although the federal government possesses broad power over immigration, enforcing the laws on removable noncitizens is a formidable challenge. To meet that challenge, ICE works with other federal law enforcement agencies, as well as

state and local governments. These cooperative efforts are critical to enabling the federal government, through ICE, to identify and remove the hundreds of thousands of noncitizens who ICE determines violate immigration laws each year and should be removed from the United States, including many thousands convicted of serious criminal offenses.

Federal law contemplates and authorizes these cooperative efforts. Permissible cooperation includes "arrest[ing] an alien for being removable" and "responding to requests for information about when an alien will be released from their custody." *Arizona*, 567 U.S. at 410. In exercising its arrest and detention authorities, ICE has for decades[3] relied on immigration detainers to seek federal, state, and local assistance in removing from the United States the tens of thousands of removable noncitizens arrested for or convicted of crimes annually. A detainer asks a law enforcement agency, state, or locality to: (1) notify ICE of the noncitizen's release date from local custody; and (2) detain the noncitizen for up to 48 hours beyond when the individual would be released on state charges, based on ICE's determination that it has probable cause to believe that the individual is

---

[3] References to immigration detainers and immigration holds on noncitizens in state or federal criminal custody can be found as early as the 1940s. *See Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir. 1962); *Slavik v. Miller*, 89 F. Supp. 575, 576 (W.D. Pa. 1950), aff'd, 184 F.2d 575 (3d Cir. 1950); *Ex parte Korner*, 123 P.2d 111, 112 (Cal. Ct. App. 1942). Congress, however, first codified the authority to issue immigration detainers in 1986 as a provision of the INA. *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207–48, § 1751(d)

removable, so that ICE can take custody of the individual in an orderly custodial setting rather than in the community. 8 C.F.R. § 287.7(a), (d); (ICE Policy No. 10074.2 ¶ 2.7)[4]. As of April 2, 2017, ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *Id*. at ¶¶ 2.4-2.6. Immigration officers may issue detainers "to any other Federal, State, or local law enforcement agency," including the USMS, and "request that such agency advise [ICE], prior to release of the alien, in order for [DHS] to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." 8 C.F.R. § 287.7(a).

The USMS is a federal law enforcement agency and is part of the U.S. Department of Justice, operating under the direction of the Attorney General. 28 U.S.C. § 561(b) (the USMS "shall ... exercise such other functions as may be delegated by the Attorney General."); https://www.justice.gov/agencies/chart. Created by the Judiciary Act of 1789, the USMS was originally an arm of the federal courts but was placed under the authority of the Attorney General in 1861; since that time, the USMS has served both the Attorney General and the judiciary as an Executive Branch agency. *See Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 46 (1985) (Stevens, J., dissenting). Robert A. Dixon, the United States Marshal for the Superior Court of the District of Columbia, like

---

(1986) (codified at 8 U.S.C. § 1357(d)).

all U.S. Marshals, is empowered to act as a Presidential appointee, nominated for office by the President and confirmed by the Senate. 28 U.S.C. § 561(a).

The primary mission of the USMS is to "provide for the security and to obey, execute and enforce all orders" of the federal courts. 28 U.S.C. § 566(a). The USMS also possesses broad law enforcement authority to "execute all lawful writs, process, and orders issued under the authority of the United States, and [to] command all necessary assistance to execute its duties," *id.* § 566(c), and "in executing the laws of the United States within a State, [it] may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof." *Id.* § 564. U.S. Marshals and Deputy U.S. Marshals may also carry firearms and make warrantless arrests in appropriate circumstances. 18 U.S.C. § 3053. Further still, in addition to these statutorily enumerated powers, the USMS "shall . . . exercise such other functions as may be delegated by the Attorney General." 28 U.S.C. § 561(b). By regulation, the Attorney General has empowered the USMS to "direct and supervise" the "[e]xecution of . . . Federal custodial warrants as directed," 28 C.F.R. § 0.111(a), and to sustain "custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of a sentence, otherwise released from custody by the court, or

---

[4] https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf

returned to the custody of the U.S. Parole Commission or the Bureau of Prisons."
*Id.* § 0.111(k).

In 1996 and again in 2002, the Attorney General also delegated to the USMS the authority to act as immigration officers, which explicitly included the authority to maintain custody of and to apprehend persons in the United States in violation of the INA. JA 69-70 (Order No. 2008-96, *Delegation of Authority to Exercise the Powers and Duties of Immigration Officers* (Feb. 2, 1996)) (the 1996 Order); JA 75-76 (Order No. 2622-2002, *Delegation of Authority to the United States Marshals Service to Exercise the Powers and Duties of Immigration Officers* (Oct. 17, 2002)) (the 2002 Order). According to the 1996 Order, the delegation authority originates from 28 C.F.R. § 0.15(a), which includes 8 U.S.C. § 1103(a) and 28 U.S.C. §§ 509, 510, and 566. JA 69-70. The 1996 Order authorizes the USMS "to perform and exercise the powers and duties of Immigration Officers for the purpose of receiving, processing, transporting, handling property for, and maintaining custody of aliens in the custody of the Attorney General." JA 69-70. The 2002 Order states that "[b]y virtue of the authority vested in [the] Attorney General, including 28 U.S.C. §§ 509 and 510," the Attorney General authorizes the USMS to "exercise the functions of immigration officers for the purposes of ... determining the location of [ ] and apprehending[ ] any alien who is in the United States in violation of the [INA]." JA 75-76.

While the USMS serves as the enforcement arm of the United States federal courts, it also fulfils this role in the Superior Court of the District of Columbia. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100690, tit. VII, § 7608(a)(1), 102 Stat. 4181, 4512–15 (1988) (codified at 28 U.S.C. §§ 561–569)[5]; DC Code section 11-1729.

This Lawsuit. Plaintiff N.S. was arrested by local D.C. police on January 13, 2020, on charges of robbery and destruction of property. JA 10, 81, 83, 90. At a hearing the following day, a D.C. magistrate judge ordered N.S. released on his own recognizance, with instructions to appear in Superior Court on January 27. JA 10, 90. N.S. is a noncitizen who at the time was suspected of being present in this country without lawful authorization under the immigration laws and was thus the subject of an ICE detainer. JA 87, 146. Pursuant to that detainer and an accompanying federal immigration warrant, USMS, which had custody of N.S. before the hearing, retained custody of him after the hearing for approximately two hours until ICE officers took custody of N.S. JA 45-46, 77-84, 90.

---

[5] Under the Anti-Drug Abuse Act of 1988, Pub. L. No. 100690, tit. VII, § 7608(a)(1), 102 Stat. 4181, 4512–15 (1988) (codified at 28 U.S.C. §§ 561–569), two United States Marshals serve the District of Columbia. The first, the U.S. Marshal for the District of Columbia, serves the U.S. District Court and this Court. 28 U.S.C. § 566(b). The second, the U.S. Marshal for the District of Columbia Superior Court, serves that court only. 28 U.S.C. § 561(c).

N.S. filed suit on behalf of a class comprising "[a]ll indigent criminal defendants in the Superior Court for the District of Columbia: (1) who were, are, or will be detained by officers of the United States Marshals Service for suspected immigration violations, and (2) as to whom ICE has not effectuated a warrant of removal/deportation (Form I-205) and/or has not obtained an order for deportation or removal." JA 9-20, 90, 147. Plaintiffs through their representative, N.S., alleged that the USMS was unlawfully seizing individuals suspected of immigration violations despite its lack of authority to do so.[6] JA 9-20. Plaintiffs sought a preliminary injunction, and later a permanent injunction, barring the USMS from cooperating with immigration detainers. JA 2-7. The district court granted both the preliminary and permanent injunctions. JA 80-118, 144-61.

On May 7, 2020, the district court granted a preliminary injunction and certified Plaintiffs' proposed class. JA 80-118. The court held that USMS arrests and seizes noncitizens when honoring detainers, and that "[t]he moment that [the magistrate judge] ordered [plaintiff] to be released on his own recognizance … the USMS's justification for holding him ended, and a new legal basis was required to

---

[6] Prior to the preliminary injunction issued by the district court, the U.S. Marshal for the D.C. Superior Court had a policy of cooperating with detainers and warrants issued by other law enforcement entities, including ICE detainers, and would "coordinate the custody of the prisoner with the agency requesting custody." JA 45-46. "If the wanted subject [was] released on all Superior Court charges the USMS [would] hold the prisoner at the courthouse until the close of business. If the subject [had] not been picked up by the close of business, the subject [would]

keep him in custody" and "neither the ICE detainer nor any enabling statute provides that basis." JA 98. (*N.S. v. Hughes*, 335 F.R.D. 337, 345-46 (D.D.C. May 7, 2020)).

The government filed a motion for reconsideration, attaching the 2002 Order; (neither the 1996 Order nor the 2002 Order was included in the initial record). JA 44, Dkt. 41. On July 24, 2020, the court denied the motion to reconsider, holding that (1) the delegation in the 2002 Order was not a proper basis for reconsideration, and even if it was (2) the 2002 Order was invalid because it violated principles of administrative law set forth in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). JA 119-36. (*N.S. v. Hughes*, 2020 WL 4260739, at *2, *4 (D.D.C. July 24, 2020)).

The government later moved for summary judgement, attaching the 1996 Order, which had not been part of the record previously. JA 6, Dkt. 84. On October 7, 2021, the district court granted in part Plaintiff's motion for summary judgment. JA 145-61 (*N.S. v. Dixon*, No. 1:20-CV-101-RCL, 2021 WL 4622490 (D.D.C. Oct. 7, 2021)). First, the district court held that ICE detainers do not "confer upon the recipient agency the legal authority to make an arrest," and noted that an ICE detainer is a "mere request," 8 C.F.R. § 287.7(a). JA 152. The Court also found that the ICE administrative warrant that accompanies a detainer request does not

be released." JA 45-46.

confer on the USMS the authority to arrest and detain, because it is not a warrant in the context of 28 C.F.R. § 0.111(a) as it is not issued by an independent judicial officer. JA 153 (citing 335 F.R.D. at 350).

Second, the court held that neither statute nor regulation confers on the USMS to authority to arrest and detain individuals for suspected immigration violations. Regarding 28 U.S.C. § 566, which authorizes the USMS to "execute all lawful writs, process, and orders issued under the authority of the United States," the court held § 566 is a "limited grant of power" that enables the USMS "to enforce only court orders." JA 154. The court concluded that § 566 did not provide the USMS with the desired authority to hold an individual because the ICE detainer is a "non-court order [that] must be separately authorized." JA 154.

Regarding regulatory authority, the court held that 28 C.F.R. § 0.111(a), which authorizes the USMS to execute federal warrants, does not confer on the USMS the authority to make arrests or detain noncitizens. JA 153. The court reasoned that an ICE detainer and the accompanying administrative warrant, referred to as an I-200 or I-205, do not constitute a federal custodial and extradition warrant that the USMS has been directed to serve, where the administrative warrant is issued to an "immigration officer" and USMS officers "are not immigration officers." JA 153. Further, the court held that the I-200s are not "warrants" in the context of 28 C.F.R. § 0.111(a). JA 153. Regarding 8 C.F.R. §

14

287.7, the court held it does not confer authority to the USMS to comply with ICE detainers because it "pertains to ICE's authority to issue a detainer, not to another agency's authority to act on an ICE detainer." JA 152-53, referring to JA 100. The court further stated that the INA provides for only trained immigration officers to make civil immigration arrests, citing 8 U.S.C. § 1357(a), which does not include the USMS. JA 153; see also JA 101-102.

Third, the court rejected the idea that either the 1996 Order or the 2002 Order, together or separately, vested the USMS with the authority to detain individuals past the time of their scheduled release. JA 154-58. While the court acknowledged that the 1996 Order authorizes USMS to "perform and exercise the powers and duties of immigration officers for the purpose of receiving, processing, transporting, handling property for, and maintaining custody of aliens in the custody of the Attorney General," the court did not agree that the "ICE hold" constituted "maintaining custody" within the statutory meaning. JA 154.  The court noted that the USMS's reading of the 1996 Order would allow the USMS, acting as immigration officers, to "maintain custody" of noncitizens interminably without ever effectuating an arrest just because those noncitizens had previously been in USMS custody in the D.C. Superior Court. JA 154. According to the court, before the magistrate judge ordered Plaintiff released, he was in the custody of the USMS (and therefore the Attorney General). JA 154. Once he was ordered released, he

15

was no longer in the custody of the Attorney General, and the USMS needed a new authority to detain him for the civil immigration charges for which he had not been arrested.

Regarding the 2002 Order, the court held it was invalid as a basis for authority to arrest or detain noncitizens because it failed to invoke § 1103(a). JA 157-158. The court determined that the 2002 Order is facially invalid under *SEC v. Chenery*, 318 U.S. 80 (1943), and thus could not authorize the USMS to make civil immigration arrests. JA 157. The court first stated that 28 U.S.C. § 509, which defines functions of the Attorney General, and § 510, which permits the Attorney General to delegate his authority, cannot support the Attorney General's promulgation of the 2002 Order because the Attorney General's "broad delegation authority does not apply where Congress has specifically and separately allocated enforcement authority over a certain action or set of actions" like it did with the INA. JA 157. The court stated that for the Attorney General to give the USMS authority over civil immigration arrests, he would have had to invoke 8 U.S.C. § 1103, which sets forth the powers and duties of the Secretary of DHS and the Attorney General. JA 157. The Court rejected the government's argument that an internal memorandum linked the 1996 Order, which did reference § 1103(a), to the 2002 Order, which did not. JA 158.

16

After holding that the government had not established any authority permitting the USMS to detain Plaintiff or any other class member, the Court issued the permanent injunction. JA 161.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's decision and vacate the permanent injunction.

I.      The district court erred in issuing a permanent injunction because it lacked authority to do so. Section 1252(f)(1) of Title 8 provides that "…no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1231], other than with respect to the application of such provisions to an individual alien against whom proceedings under [those provisions] have been initiated." The injunction issued by the district court restrains the federal government's authority under section 1226 and 1231 to arrest and detain removable noncitizens both by preventing ICE from relying upon the USMS to effect detainers and administrative warrants with respect to a class of people and by prohibiting the USMS from acting on a detainer or federal immigration arrest warrant. Therefore, the injunction is subject to the limits of Section 1252(f).

17

II.    The district court erred in concluding that the USMS lacked authority to detain removable individuals at ICE's request based on federal immigration detainers and warrants. The INA provides that immigration "powers, privileges, or duties" may be broadly delegated. 8 U.S.C. § 1103(a)(4). Invoking that provision of the INA, in 1996, the Deputy Attorney General delegated to Marshals and Deputy Marshals "the powers and duties of Immigration Officers for the purpose of receiving, processing, transporting, handling property for, and maintaining custody of aliens in the custody of the Attorney General." JA 69-70 (1996 Order (citing 8 U.S.C. § 1103(a)). In 2002, the Attorney General issued a follow-on order "clarif[ying]" that this delegation includes the "authority to make actual apprehensions." JA 75-76 (2002 Order). Under the 2002 Order, Marshals and Deputy Marshals are authorized "to exercise the functions of immigration officers for the purpose of (1) determining the location of, and apprehending, any alien who is in the United States in violation of the [INA], or any other law or regulation relating to visas or the conditions of visas, admission of aliens or the conditions of admission, the maintenance of status as an immigrant or nonimmigrant or in any category of nonimmigrant; and (2) enforcing any requirements of such statutes or regulations, including, but not limited to, requirement for nonimmigrant aliens subject to special registration under 8 C.F.R. § 264.1(f)." JA 75-76 (2002 Order). Given these specific delegations, the court erred in concluding that neither the

1996 nor the 2002 Orders—even if linked—gave USMS the authority to cooperate with a detainer.

The Court also erred in using *Chenery* to invalidate the delegation issued by the Attorney General. *Chenery* does not apply where, as here, the issue turns on a purely legal question such as the statutory bounds of the agency's authority. *See Rocky Mountain Health Maintenance Org., Inc. v. Price*, 297 F. Supp. 3d 152, 160–61 (D.D.C. 2018) ("A reviewing court . . . is not constrained under *Chenery* when examining agency decisions that do 'not depend upon a factual determination or a policy judgment that it alone is authorized to make.'" (quoting *Shea v. Director, Office of Workers' Comp. Programs, United States Dep't of Labor*, 929 F.2d 736, 739 n. 4 (D.C. Cir. 1991)). This case presents a purely legal question—whether the Attorney General had the statutory authority to make the delegation in the 2002 Order—not a question of fact or a policy judgment that would implicate *Chenery*. Nothing in *Chenery* or its progeny dictated that the court must refuse the Attorney General the authority explicitly afforded him by Congress merely because he did not directly cite the source of that authority in his order.

III.    Finally, the district court erred in issuing a permanent injunction because in considering the balancing of the equities, the class members did not suffer an irreparable injury of sufficient significance to warrant the injunctive relief provided. There is no dispute that their detention was authorized by statute. They

simply challenged the *identity* of the federal official detaining them. That sort of harm is too insignificant to warrant a permanent injunction precluding their arrest and detention entirely. Furthermore, although Plaintiffs were subject to detainers *in the past*, the injunctions bar the issuance of a wide swath of detainers on a *prospective* basis. The district court had no legal basis to provide that relief because plaintiffs did not demonstrate a "real and immediate threat that the injury"—that they would be subject to detention premised on a detainer—"will be repeated." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107-08 (1983).

**STANDARD OF REVIEW**

This Court reviews a district court's entry of a permanent injunction for abuse of discretion and its factual findings for clear error. *United States v. Philip Morris USA Inc.,* 566 F.3d 1095, 1110 (D.C.Cir.2009) (per curiam). Questions of law, by contrast, are reviewed de novo." *O'Hara v. District No. 1–PCD,* 56 F.3d 1514, 1522 (D.C.Cir.1995). "By definition, a district court abuses its discretion when it makes an error of law." *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (cleaned up).

## ARGUMENT

### I.  8 U.S.C. § 1252(f) precluded the district court from issuing the permanent injunction.

The district court exceeded its authority in issuing a permanent injunction which prohibits the federal government from implementing 8 U.S.C. §§ 1226 and 1231 in its chosen manner. Section 1252(f)(1) states that, "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" the specified provisions, with one exception not relevant here. 8 U.S.C. 1252(f)(1). Section 1252(f)(1) applies here by its plain terms. It is undisputed that Sections 1226(c) and 1231(a) are among the specified provisions. As the Supreme Court recently explained, Section 1252(f)(1)'s reference to "the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them." *Aleman Gonzalez*, 142 S. Ct. at 2064. Here, the injunction plainly runs afoul of section 1252(f). As explained, Sections 1226 and 1231 authorize the federal government arrest and detain removable noncitizens. Section 1226 authorizes the arrest and detention of noncitizens in removal proceedings pending a decision on removability, 8 U.S.C. § 1226(a), and it compels the arrest and detention of noncitizens who have committed certain criminal offenses, 8 U.S.C. § 1226(c).  Section 1231 compels

the detention and removal of noncitizens who have been ordered removed. 8 U.S.C. § 1231. Section 1231(a)(2) further provides that "under no circumstances" may certain noncitizens found removable on particular grounds be released from custody during the removal period. *Id*. DHS, the agency responsible for ultimately removing noncitizens found removable, has issued regulations implementing those provisions. *See* 8 C.F.R. §§ 236, 241. Section 236 is the regulation which implements Section 1226, and Section 236.1, titled "apprehension, custody, and detention," provides for the use of detainers and administrative warrants (referred to as Form I-200s), in conformity with Sections 287.5 and 287.7. The Attorney General has twice separately implemented Sections 1226 and 1231 by delegating to USMS authority to make arrests based on immigration detainers and warrants and to otherwise enforce the relevant statute and regulations governing immigration arrest, detention, and removability.

Moreover, the specific warrant the district court enjoined the government from enforcing, the I-200 form, is titled "Warrant for Arrest of Alien," and the regulations implementing Section 1226 specifically identify the I-200 as the "warrant issued by the Attorney General" referred to in 8 U.S.C. 1226(a). *See* 8 C.F.R. 236.1(b)(1). The classwide injunction restrains the federal government from implementing and carrying out its authority under Section 1226 to arrest and detain removable noncitizens, both by preventing ICE from relying upon the USMS to

22

effect detainers and execute properly issued administrative warrants with respect to a class of people and by prohibiting USMS from electing to effectuate immigration arrests at ICE's request based on the warrants authorized by Section 1226. The injunction thus "restrain[s] the operation of [§ 1226(a)] because [it] require[s] officials. . . to refrain from actions that ([] in the government's view) are allowed by [§§ 1226(a)]." *Aleman Gonzalez*, 142 S.Ct. at 2065.

In two recent decisions, the Supreme Court held that 8 U.S.C. § 1252(f)[7] "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain INA provisions, including 8 U.S.C. §§ 1226 and 1231. *Biden v. Texas*, 142 S.Ct. 2528, 2538 (2022), quoting *Aleman Gonzalez*, 142 S.Ct. at 2065.

First, in *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for noncitizens detained under 8 U.S.C. § 1231(a)(6). *Aleman Gonzalez*, 142 S.Ct. at 2065. The Court held that

---

[7] 8 U.S.C. § 1252(f) provides that: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232], other than with respect to the application of such provisions to an individual alien against whom proceedings under [those provisions] have been initiated."

"[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by §1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by §1231(a)(6)." *Id.* Because "[t]hose injunctions thus interfere with the Government's efforts to operate §1231(a)(6)" in its chosen manner, they were barred by § 1252(f)(1). *Id.* The Court squarely held that § 1252(f)(1) applies where, as here, a plaintiff alleges that "the Government [i]s misinterpreting and misapplying a covered statutory provision." *Id.* at *7.

Shortly thereafter, in *Biden v. Texas*, the Supreme Court reaffirmed this holding. It held the district court violated Section 1252(f) by issuing a nationwide injunction requiring DHS to reimplement the Migrant Protection Protocols, a 2019 program authorizing immigration officers to exercise discretion, on a programmatic basis, under 8 U.S.C. § 1225(b)(2)(C)[8] to return to Mexico certain noncitizens arriving on land from Mexico pending their removal proceedings under 8 U.S.C. § 1229(a). *Texas*, 142 S.Ct. at 2538.

*Texas* and *Aleman Gonzalez* dictate the same result here—that the district court lacked any authority under Section 1252(f) when it issued an injunction that barred USMS, its subordinates and employees, from arresting and detaining, in the

---

[8] The section reads, "[i]n the case of an alien . . . who is arriving on land . . . from a foreign territory contiguous to the United States, the [Secretary] may return the alien to that territory pending a proceeding under section 1229a."

Superior Court for the District of Columbia, criminal defendants subject to detention and federal immigration arrest warrants under §§ 1226(a) and 1231(a). The injunction violates § 1252(f)(1) because it limits what the government can and cannot do under the removal and detention provisions and does so on behalf of a class consisting of individuals who are subject to detention under sections 1226.

*Aleman Gonzalez* likewise forecloses any argument that the injunction was appropriate as to N.S. and the individual members of the class under the exception in the final clause of § 1252(f)(1), which permits injunctive relief "with respect to the application of such provisions [of the immigration laws] to an individual alien against whom proceedings under such part have been initiated," 8 U.S.C. 1252(f)(1). The Court explained that § 1252(f)(1) "refers to 'an individual,' not 'individuals,'" and thus "bars class-wide injunctive relief." *Aleman Gonzalez*, 142 S. Ct. at 2067; *see id.* at 2065 (reiterating that Section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief") (citation omitted); *Jennings*, 138 S. Ct. at 851 (same); *Reno* v. *American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 481 (1999) (same).

Because the Court exceeded its authority under section 1252(f), the Court should vacate the judgment and injunction.

## II.    The Court erred in finding USMS lacks authority to briefly hold noncitizens past their release from criminal custody.

(1) The Attorney General properly delegated authority to the USMS to honor detainers and execute administrative warrants.

The district erred in concluding the Attorney General's statutorily-based delegations did not supply USMS with the necessary authority to effectuate an immigration arrest premised on an ICE detainer and federal immigration warrant for the brief period of time necessary for ICE to take custody of an otherwise removable noncitizen. The 2002 Order on its own, and certainly coupled with the 1996 Order, vested in the USMS the authority to detain noncitizens subject to ICE detainers.

The INA provides that immigration "powers, privileges, or duties" may be broadly delegated. 8 U.S.C. § 1103(a)(4). Invoking that provision, in 1996, the Deputy Attorney General—who as a general matter is "authorized to exercise all the power and authority of the Attorney General," 28 C.F.R. 0.15(a); see 28 U.S.C. §§ 504, 510—issued an order "authoriz[ing] the [USMS] to perform and exercise the powers and duties of Immigration Officers for the purpose of receiving, processing, transporting, and handling property for, and maintaining custody of aliens in the custody of the Attorney General." JA 69-70. The Deputy Attorney General stated that she was issuing the order "[b]y virtue of the authority vested in me as Deputy Attorney General by 28 C.F.R. § 0.15(a), including 8 U.S.C. §

26

1103(a) and 28 U.S.C. §§ 509, 510, and 566." JA 69-70. At the time, 8 U.S.C. § 1103(a) stated that "[t]he Attorney General shall be charged with the administration and enforcement" of the immigration laws, and that "[h]e may require or authorize any employee of [the former INS] or the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon any other employee of the [INS]." 8 U.S.C. § 1103(a) (1994); see 8 U.S.C. §§ 1103(a) and (4) (same, with the Secretary of Homeland Security replacing the Attorney General and ICE replacing INS).

In 2002, the Attorney General issued an order "authoriz[ing] the [USMS] to exercise the functions of immigration officers for the purpose of (1) determining the location of, and apprehending, any alien who is in the United States in violation of the" immigration laws; "and (2) enforcing any requirements of such [laws]." JA 75-76. An accompanying internal agency memorandum explained that "[u]nder existing authority, a number of aliens have been held by the [USMS] in varying capacities on behalf of the Immigration and Naturalization Service (INS)," and that "[t]he attached order will clarify that authority to include actual apprehensions." JA 72-73 (Dinh Memo). The Attorney General stated that he was issuing the order

"[b]y virtue of the authority vested in me as Attorney General, including 28 U.S.C. §§ 509 and 510." 2002 Order.[9] JA 75-76.

The 2002 Order on its own, and certainly coupled with the 1996 Order, constituted a proper delegation of authority to the USMS to hold class members for the brief period of time after they were ordered released by the magistrate before ICE picked them up. The district court concluded that when the magistrate judge released N.S., he was no longer in the custody of the USMS, such that the USMS could not "maintain" custody of him, but instead required a new basis for arrest.

---

[9] The 1996 Order and the 2002 Order were issued at a time when the Attorney General possessed the power to delegate immigration-officer authority. 8 U.S.C. § 1103(a) (1996), *id.* (2002). That power now lies with the Secretary of the Department of Homeland Security, *id.* (2018), which was formed in November 2002, *see* Homeland Security Act of 2002, Pub. L. No. 107-292, § 441, 116 Stat. 2142, 2192 (Nov. 25, 2002). The transfer of immigration responsibilities from the Department of Justice to the Department of Homeland Security did not affect the Attorney General's delegation to the Marshals Service, however, because the Homeland Security Act contains a savings clause providing that the "[c]ompleted administrative actions of an agency shall not be affected by the enactment of this chapter or the transfer of such agency to the Department, but shall continue in effect according to their terms until amended, modified, superseded, terminated, set aside, or revoked in accordance with law by an officer of the United States or a court of competent jurisdiction, or by operation of law." 6 U.S.C. § 552(a)(1). This provision gives continued effect to the Attorney General's delegation to this day because the delegation has never been altered or revoked. *See* JA 123 (holding that "the 2002 Order falls within the [Homeland Security Act's] savings provision"); *see also King v. United States*, 130 Fed. Cl. 476, 480 (2017) (noting that the Homeland Security Act's savings clause "ensured that existing delegation agreements continued in effect" unless revoked of superseded by the Department of Homeland Security).

JA 154-55.[10] ICE's detainer and administrative warrant provided probable cause for a separate arrest. 8 C.F.R. § 287.7 And the 2002 Order, on its face, provided the USMS with the authority to effect that arrest. It states that the USMS shall "exercise the function of immigration officers for the purpose of. . . apprehending[] an alien who is in the United States in violation of the Immigration and Nationality Act." JA 75-76. Nonetheless, the district court found that the 2002 Order was not a proper exercise of delegatory authority because it did not expressly cite 8 U.S.C. § 1103(a), and thus violated the *Chenery* doctrine. JA 157, citing to *SEC v. Chenery*, 318 U.S. 80 (1943)). The court erred.

    (a) *Chenery* does not render null the 2002 Order.

In *Chenery*, the Court held that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." 318 U.S. at 87. Thus, where the

---

[10] The government disputes, though does not appeal, the district court's finding that N.S. was no longer "in custody" after the magistrate ordered him released, such that the USMS could not possibly "maintain" custody of him. There is a distinction between legal custody and physical custody. For example, a person might not be in the department of correction's physical custody but may still be within its legal custody. *See Samson v. California*, 547 U.S. 843, 844 (2006). So too can a person be in the department of correction's physical custody but not in its legal custody—for example in the moments after bail is paid, or here, after N.S. was ordered released by the magistrate judge. In those moments, N.S. was no longer in the legal custody of the USMS, but he was in their physical custody. Because he was in their physical custody, the USMS could indeed "maintain" custody of him as the detainer requested, and as the 1996 Order vested them with authority to do.

agency's action implicates discretion, the validity of that action depends on whether the agency's contemporaneous rationale was legal and reasonable. *Id.* at 94-95. In other words, where the agency's contemporaneous rationale is defective, courts must remand[11] even if the agency can provide a reasonable and lawful post-hoc rational for its actions. *Chenery*, 318 U.S. at 93-94; *Loc. 23, Am. Fed'n of Musicians v. Nat'l Lab. Rels. Bd.*, 12 F.4th 778, 784 (D.C. Cir. 2021). The district court erred when it found that *Chenery* rendered the 2002 Order invalid.

First, the 2002 Order states that the Attorney General issued it "[b]y virtue of the authority vested in me as Attorney General, *including* 28 U.S.C. §§ 509 and 510." JA 76 (emphasis added). The word "include" and its cognates ordinarily are non-restrictive. *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) (explaining that "use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive"); *Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 534 (D.C. Cir. 2020) ("It is hornbook law that the use of the word 'including' indicates that the specified list that follows is illustrative, not exclusive.") (cleaned up). Thus, on its face, the 2002 Order indicates that the Attorney General was relying on other sources of "authority vested in" him. And the authorities granted in Section 1103 are hardly obscure or infrequently invoked; indeed, it would have

---

[11] Many courts have also vacated the agency action and remanded. However, Defendants submit that vacatur is not a proper remedy under the APA. *See United States v. Texas*,

been obvious to any contemporaneous law-trained reader that the 2002 Order's delegation to USMS "to exercise the functions *of immigration officers*" necessarily relied on the Attorney General's authority to delegate immigration functions granted to him under the immigration laws, JA 76 (emphasis added), and was not merely a post-hoc rationalization.

Second, the record is clear that the Attorney General relied on 8 U.S.C. § 1103(a) as a basis for the Attorney General's 2002 delegation. The 1996 order authorizing USMS to exercise immigration officer functions and maintain custody of noncitizens explicitly refers to 8 U.S.C. § 1103(a) as a source of authority. The Dinh Memo states that the 2002 Order was needed to "clarify that [USMS's existing] authority" would "include actual apprehensions," JA 73. Taken together, it is clear that in issuing the 2002 Order, the Attorney General contemplated Section 1103(a) as a source of authority, and that his reliance upon Section 1103(a) is not merely a post-hoc rationalization. In other words, the Attorney General's reliance upon Section 1103(a) in issuing the 2002 Order "may reasonably be discerned" from the administrative record, because that provision was cited as authority for the very delegation that the 2002 order clarified. *Cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-514 (2009) (explaining that a court "should 'uphold a decision of less than ideal clarity if the agency's path may

---

143 S. Ct 1964, 1981-82 (2023) (Gorsuch, J., concurring).

reasonably be discerned'"); *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (same).

Third, *Chenery* does not apply, where, as here, whether the agency action was authorized to act is a purely legal question. *Sierra Club v. FERC*, 827 F.3d 36, 48–49 (D.C. Cir. 2016) (*Chenery* does not apply where the agency action already made may have properly been based on another ground within the power of the court to formulate); *Rocky Mountain Health Maintenance Org., Inc. v. Price*, 297 F. Supp. 3d 152, 160–61 (D.D.C. 2018) ("A reviewing court . . . is not constrained under *Chenery* when examining agency decisions that do 'not depend upon a factual determination or at 739 n. 4); *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 304 (D.C. Cir. 2015) (*Chenery* applies only to "determinations specifically entrusted to an agency's expertise," not "legal principles" of the sort "that a court usually makes"). Whether the Attorney General had the statutory authority to make the delegation in the 2002 Order is a purely legal question, for which the answer is obvious—of course he did. Congress gave him that right in Section 1103(a). Nothing in *Chenery* or its progeny holds that the Court must refuse the Attorney General the authority explicitly afforded him by Congress merely because he did not directly cite the source of that authority in issuing an order.

Fourth, while the district court held that only Section 1103 could have authorized the delegation, that is incorrect. 28 U.S.C. §§ 509, 510 (2002), both of

which were cited in the 2002 Order, also authorized the delegation. 28 U.S.C. § 509 vests in the Attorney General the functions of all other officers and agencies within the Department of Justice (with few exceptions not relevant here), which, in 2002, included immigration functions performed by the Immigration and Naturalization Service, 8 U.S.C. § 1103(a) (2002). 28 U.S.C. § 510 permits the Attorney General to authorize "the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

The district court held, however, that the Attorney General could not delegate immigration functions under 28 U.S.C. §§ 509, 510 because 8 U.S.C. § 1103 supposedly provides a more specific delegation authorization. JA 157. In support of that holding, the court relied (*ibid.*) on *United States v. Giordano*, in which the Supreme Court held that the Attorney General had not lawfully delegated authority to his Executive Assistant to issue wiretaps under § 510, where a separate provision—18 U.S.C. § 2516(1)—provided that such delegations may be made only to a specially designated Assistant Attorney General. 416 U.S. 505, 512–23 (1974). Delegating wiretap-approval authority to a different DOJ employee (as the Attorney General had done in *Giordano*) under Section 510 circumvented the more specific statute's express limitations. The critical difference here is that 28 U.S.C. § 510 and 8 U.S.C. § 1103(a) are not in tension. The former permits delegation to "any officer, employee, or agency of the Department of Justice," 28

33

U.S.C. § 510, and the latter allows delegation of immigration functions to "any employee . . . of the Department," 8 U.S.C. § 1103(4) (2002). While it is true that a specific statute usually controls over a general one, "[t]her canon is impotent . . . unless the compared statutes are 'irreconcilably conflicting.'" *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 698 (D.C. Cir. 2014) (quoting *Detweiler v. Pena*, 38 F.3d 591, 596 (D.C. Cir. 1994)). Here, the delegation of immigration functions under Section 510 to USMS personnel does not circumvent limitations on delegation in Section 1103.

>    (b) The district court erred in holding that 8 C.F.R. § 287.5 rendered null the 2002 and 1996 Orders.

In its final order, issuing the permanent injunction, the district court referred back to its prior order denying reconsideration, noting that even if the 2002 Order effected a valid delegation of arrest authority (including under *Chenery*), it still would violate 8 C.F.R. § 287.5. JA 149, 152. That regulation states that immigration officers "who have successfully completed basic immigration law enforcement training" may arrest noncitizens for suspected civil immigration violations. 8 C.F.R. § 287.5(c)(1) and (e)(3). The district court reasoned that any USMS official arresting a noncitizen under the 2002 Order would be acting as an immigration officer; no USMS official has undergone the requisite training; and therefore the 2002 Order would not authorize the arrest of N.S. and the class

members by USMS personnel even if the order were valid. JA 102, 149. This reasoning is flawed.

The list of immigration officers authorized to make arrests in 8 C.F.R. § 287.5(c)(1)(i)-(vii) (for Section 1357 arrests) and (e)(3)(i)-(viii) (for Section 1226 arrests) plainly do not include USMS personnel. The point of the delegation in the 2002 Order was to allow USMS personnel to exercise arrest authority *notwithstanding* the fact that they were not listed in the regulation. Given that the purpose of the 2002 Order was to create an exception to the regulatory requirement, there is no basis to insist that the Marshals Service be subject to the regulation's training requirement. In other words, the training condition attached to the delegation of authority in 8 C.F.R. § 287.5 could not possibly apply to Marshals because the regulation did not apply to the Marshals.[12]

Neither is there anything contradictory between 8 C.F.R. § 287.5 and a delegation of authority to the Marshals Service that does not itself include a training requirement. Nothing in the language of the regulation purports to award *exclusive* authority to the listed agents and officers or to limit the authority of the Attorney General to delegate immigration-officer functions to other employees of

---

[12] 8 C.F.R. § 287.5 is currently administered by the Department of Homeland Security, *see* 8 C.F.R. ch. 1, and was promulgated by INS, 59 Fed. Reg. 42,406, 42, 406. The USMS is not a subordinate component of either agency, and the regulations of those agencies therefore could not have conditioned the arrest authority of the Marshals.

the Department under 28 U.S.C. § 510 or 8 U.S.C. § 1103(a). Two groups of employees may plainly exercise the same authority, with one group requiring training as a precondition, and the other not. *See Samoya-Martinez v. Holder*, 558 F.3d 897 (9th Cir. 2009). In *Samoya-Martinez*, a plaintiff argued that a military police officer was prohibited from conducting an immigration arrest because he had not completed the basic training requirements set forth in 8 C.F.R. § 287.5. *Id.* at 900. The court concluded that military police had independent authority to arrest and detain individuals for violations of civil law and there was "no factual or legal support for the theory that the military police . . . must comply with immigration regulations." *Id.* at 900–91. So too here. The 2002 Order (on its own, or at a minimum coupled with the 1996 Order) provided the Marshals Service with authority independent of 8 C.F.R. § 287.5 to affect immigration arrests.

> (c) Because the 1996 and 2002 delegations delegated USMS as immigration officers, 28 C.F.R. § 0.111(a) also provided USMS with authority to arrest and detain noncitizens.

Because the delegations lawfully delegated authority to USMS to make immigration arrests, the district court erred in concluding the USMS's organic regulation does not authorize the arrests at issue here. 28 C.F.R § 0.111(a) provides that "The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including… [e]xecution of Federal arrest warrants pursuant to rule 4 of the Federal Rules of Criminal Procedure . . .and

Federal custodial and extradition warrants as directed." ICE is a federal law enforcement agency, and thus a warrant issued by ICE is, by definition, a "federal custodial" warrant.

The district court nevertheless held that an ICE detainer and accompanying I-200 forms do not constitute a "custodial or extradition warrant[]" because "the I-200 form is not issued to the USMS" and because "I-200 forms are not 'warrants' in the context of 28 C.F.R. 0.111(a)" on the ground that they are not issued by a neutral judicial officer. JA 152, referring back to JA 105-106. Given that the 1996 Order and 2002 Order properly delegated authority to the USMS to act as immigration officers, these holdings are erroneous.

First, the I-200 form is directed to an "immigration officer authorized pursuant to [8 U.S.C. 1226 and 1357 and 8 C.F.R. part 287] to serve warrants of arrest for immigration violations."   JA 26. As set forth above, the USMS are authorized to act as immigration officers for the purpose of detaining and arresting removable noncitizens. The Attorney General delegated to the Marshals Service the authority "to exercise the functions of immigration officers," including for the express purpose of "maintaining custody" of aliens, JA 69-70, and "apprehending[] any alien who is in the United States in violation of the Immigration and Nationality Act," JA 75-65. And the INA superficially defines an "immigration officer" as "any employee or class of employees of the Service *or of the United*

*States* designated by the Attorney General, *individually* or by regulation, *to perform the functions of an immigration officer*." 8 U.S.C. § 1101(a)(18) (emphases added). Accordingly, the USMS are proper recipients of the I-200.

Second, the warrants are issued under 8 U.S.C. § 1226(a), which authorizes DHS to issue "warrants" of arrest for removable noncitizens. The I-200 form is titled "Warrant for Arrest of Alien" and the regulations implementing Section 1226 specifically identify the I-200 as the "warrant issued by the Attorney General" referred to in 8 U.S.C. § 1226(a). *See* 8 C.F.R. § 236.1(b)(1). There is no sound basis to treat the I-200 as a "warrant" for purposes of 8 C.F.R. § 236.1(b) but not for purposes of 28 C.F.R. § 0.111(a). The Supreme Court has long recognized the "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens" pursuant to "administrative arrest *warrants*," *Abel v. United States*, 362 U.S. 217, 233-234(1960) (emphasis added); *see id.* at 232 ("legislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation."); *accord United States v. Lucas*, 499 F.3d 769, 776 (8th Cir. 2007) (en banc) (plurality) ("The Supreme Court has upheld administrative warrants and has never held that administrative warrants must be issued by a neutral and detached magistrate in the sense of [a judicial officer]. An

administrative arrest warrant issued by a district director of the Immigration and Naturalization Service pursuant to a deportation statute led to a valid arrest."). The I-200 is precisely such, and recognized as a lawful, administrative warrant.

Moreover, the term "magistrate" as it is understood in the arrest and presentment context is not limited to judicial officers; it in fact encompasses any "public civil officer, possessing such power—legislative, executive, or judicial—as the government appointing him may ordain." *Shadwick v. City of Tampa*, 407 U.S. 345, 349 (1972); *see Compton v. Alabama*, 214 U.S. 1, 7 (1909) ("the appellation of magistrate is not confined to justices of the peace, and other persons, ejusdem generis, who exercise general judicial powers; but it includes others whose duties are strictly executive").

It is thus well-settled that federal immigration officials in the Executive Branch may function as magistrates by issuing administrative warrants under federal statutes authorizing them to do so. *Abel*, 362 U.S. at 234 (1960) (recognizing propriety of immigration arrest based on "administrative warrant" issued by the Executive; such arrests do not require "a judicial warrant within the scope of the Fourth Amendment."); *City of El Cenizo v. Texas*, 890 F.3d 164, 180 (5th Cir. 2018) ("It is undisputed that federal immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability."); *Lucas*, 499 F.3d at 776 (similar); *Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir.

1985) (aliens "may be arrested by administrative warrant issued without order of a magistrate."); *Lopez-Lopez v. Cnty. of Allegan*, 321 F. Supp. 3d at 799 ("Administrative warrants differ significantly from warrants in criminal cases because they do not require a detached and neutral magistrate. Instead, executive officers may issue an administrative warrant upon probable cause to believe a civil infraction has occurred"); *but see*, *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020) ("[T]he Fourth Amendment requires a prompt probable cause determination by a neutral and detached magistrate to justify detention beyond that which may be initially justified by any probable cause determination of removability."). Given this overwhelming authority recognizing "from almost the beginning of the nation," *Abel*, 362 U.S. at 234, administrative arrest warrants in the immigration context as true warrants supporting a proper arrest, there is no basis to exclude such warrants from the "Federal custodial warrants" that the USMS is authorized by regulation to execute. Indeed, the regulation specifically authorizes the Marshals Service to execute "Federal custodial warrants" in addition to "arrest warrants pursuant to rule 4 of the Federal Rules of Criminal Procedure," making clear that judge-issued criminal warrants are not the only sort of warrants contemplated by the regulation. *See* 28 C.F.R. § 0.111(a). Indeed, there can be no dispute that the Marshal has the authority to take individuals into custody on other nonjudicial warrants, including retake parolee

40

warrants. *See Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 871 (9th Cir. 2007) (Marshal appropriately took custody of individual under federally authorized "retake" warrant, which need not comply with the Fourth Amendment); *see also Henderson v. Simms*, 223 F.3d 267, 269-73(4th Cir. 2000) (upholding against Fourth Amendment challenge statute authorizing prison wardens to issue "retake warrants" for parolees without judicial review); *United States ex rel. Randazzo v. Follette*, 418 F.2d 1319, 1322 (2d Cir. 1969) (holding that a parole-violator warrant designated as "administrative" under New York law was not subject to ordinary Fourth Amendment safeguards).

## III.    The injunction was improper under traditional equitable principles.

Prior to issuing an injunction, a court must "balance the competing claims of injury and … consider the effect on each party with the granting or withholding of the requested relief," *Winter v. NRDC*, 555 U.S. 7, 24 (2008), in addition to paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).[13]

---

[13] Likewise, the decision to order relief under the APA must be exercised in conformity with equitable principles, including the principle that courts must weigh the costs to each party of entering relief. *Allied–Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993).

The district court found that the class members suffered irreparable injury because of the "deprivation of liberty that includes being shackled and detained," even if "for only a few hours" between arrest and transfer to ICE custody. JA 109 (preliminary injunction); accord JA 159 (permanent injunction)). But the court was wrong that the class members suffered a deprivation of liberty. They did not. They were subject to arrest and detention under 8 U.S.C. §§ 1226 and 1357. There is no deprivation of liberty where a person has no right to be free. *See*, *Gonzales v. Collins*, 21 F.3d 1108 (5th Cir. Apr.22, 1994).

In *Gonzalez*, the plaintiff sued for damages under 8 U.S.C. § 1983 on the grounds that he was held by the Texas Department of Criminal Justice (TDCJ) for many months after he was entitled to be released under Texas' mandatory supervision release statute. *Id*. at 1108. The Court of Appeals affirmed the dismissal of his claim because although he was unlawfully held by the TDCJ, he was not entitled to be free. Instead, he was subject to a detainer issued by the Immigration and Nationality Service many months earlier. "Given that Mr. Gonzales was never entitled to be released to freedom under the Texas mandatory supervision release statute, but was entitled only to be transferred to federal detention under the authority of the INS, we hold that Mr. Gonzales, in failing to be timely released from state to federal custody, has suffered no deprivation of liberty." *Id.; see also*, *Knowlin v. Thompson,* 207 F.3d 907, 909 (7th Cir.2000) (no

deprivation of liberty from inability to challenge extradition where plaintiff would have been in custody regardless); *Rosario v. New York City*, No. 12 CIV. 4795 PAE, 2013 WL 2099254, at *4-5 (S.D.N.Y. May 15, 2013) (where section 1231 authorized 90-day detention for execution of a final order of removal, Petitioner could not assert habeas claim premised on fact that part of that 90-day detention period occurred in state rather than federal custody); *Maphorisa v. Delaney*, No. CIV.A. 09-2689, 2010 WL 4321031, at *3 (E.D. Pa. Nov. 1, 2010), *aff'd*, 431 F. Apx 67 (3d Cir. 2011) ("Even assuming, *arguendo,* that Maphorisa should have been transferred from state custody to DHS more rapidly, such an allegation still would not state a claim upon which relief could be granted.")

Here, the class members did not challenge their *detention*, but rather only the *identity* of the federal official detaining them. That sort of harm, which is too insignificant to sustain a Section 1983 claim, is similarly too insignificant to warrant a permanent injunction precluding their arrest and detention entirely. Section 1226 authorizes the federal government to arrest and detain removable noncitizens. The district court's injunction creates a loophole to the Congressional scheme, which allows removable noncitizens to avoid Congressional detention directives based on happenstance as to whether ICE can arrive at the jail at precisely the moment of the noncitizens release.

43

Furthermore, the district court erred in issuing prospective injunctive relief because an "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111; *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (a plaintiff seeking prospective injunctive relief may not rest on past injury but instead must establish an ongoing or future injury that is "certainly impending"). N.S. was not in criminal custody at the time of the filing of the operative complaint, let alone subject to a detainer. Therefore, he was not subject to an ongoing injury. He also did not face a "certainly impending" imminent injury. To have been "wronged again," he would have had to have been arrested again on state criminal charges, ICE would have to have issued a new detainer, he would have to have been released from criminal custody, and again held by a U.S. Marshal. Such a "speculative chain of possibilities does not establish" future injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). That is especially clear where, as here, "the prospect of future injury" rests "on the likelihood that [N.S.] will again be *arrested* for and charged with violations of the criminal law and will again be subjected to" to an unlawful seizure, *Lyons*, 461 U.S. at 103. In such circumstances, N.S. failed to show he was entitled to prospective injunctive relief on behalf of the class. *Id*; *see O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (courts must "assume that

[individuals] will conduct their activities within the law"). Accordingly, the court did not have authority to issue a prospective injunction.

## CONCLUSION

The Court should overturn the district court's permanent injunction.

Dated: November 2, 2023               Respectfully submitted,


MATTHEW M. GRAVES                     BRIAN M. BOYNTON
*United States Attorney*              *Principal Deputy Assistant Attorney General*

                                      WILLIAM C. PEACHEY
                                      *Director*
                                      Office of Immigration Litigation
                                      District Court Section

                                      EREZ REUVENI
                                      *Assistant Director*

                                      */s/ Elissa Fudim*
                                      ELISSA FUDIM
                                      *Trial Attorney*
                                      U.S. Department of Justice, Civil Division
                                      Office of Immigration Litigation,
                                      District Court Section
                                      P.O. Box 868, Ben Franklin Station
                                      Washington, D.C. 20044
                                      Tel: (202) 598-6073
                                      Email: elissa.p.fudim@usdoj.gov

                                      *Counsel for Defendant-Appellant*

45

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 because it contains 10,898 words, including footnotes. This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally-spaced typeface using Microsoft Word 14-point Times New Roman font.

*/s/ Elissa Fudim*
ELISSA FUDIM
United States Department of Justice
Civil Division

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2023, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

<u>*/s/ Elissa Fudim*</u>
ELISSA FUDIM
United States Department of Justice
Civil Division