No. 21-5275

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

N.S., individually and on behalf of all others similarly situated,
*Plaintiff-Appellee*,

v.

Robert A. Dixon, United States Marshal,
District of Columbia (Superior Court), in his official capacity,
*Defendant-Appellant*.

---

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 20-cv-101
Hon. Royce C. Lamberth

---

## BRIEF OF AMICUS CURIAE  NATIONAL IMMIGRANT
## JUSTICE CENTER IN SUPPORT OF APPELLEE

---

Keren Zwick
Mark Fleming
NATIONAL IMMIGRANT
JUSTICE CENTER
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: (312) 660-1364
F: (312) 660-1505
*kzwick@immigrantjustice.org*
*mfleming@immigrantjustice.org*

*Attorneys for amicus curiae*
*National Immigrant Justice Center*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus* states that they do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in *amicus*.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. i

TABLE OF CONTENTS .............................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................... iii

INTEREST OF AMICUS CURIAE ............................................................................ 1

INTRODUCTION ....................................................................................................... 2

ARGUMENT ............................................................................................................... 4

    I.    USMS lacks the authority to execute ICE detainers and administrative warrants. ......................................................................................................... 4

    II.    N.S. Has Multiple Other Remedies Irrespective of 8 U.S.C. § 1252(f)(1) ................................................................................................... 7

CONCLUSION .......................................................................................................... 11

CERTIFICATE OF COMPLIANCE ....................................................................... 13

CERTIFICATE OF SERVICE ................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
  619 F. Supp. 3d 1029 (S.D. Cal. 2022)....................................................................11

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998) ......................................................................................8

*Biden v. Texas*,
  597 U.S. 785 (2022) ......................................................................................8

*Brnovich v. Biden*,
  630 F. Supp. 3d 1157 (D. Ariz. 2022)..................................................................11

*California v. Arizona*,
  452 U.S. 431 (1981) ......................................................................................9

*E. Bay Sanctuary Covenant v. Biden*,
  No. 18-06810, 2023 WL 4729278 (N.D. Cal. July 25, 2023) .................................11

*Esparza v. Nobles Cnty.*,
  No. A18-2011, 2019 WL 4594512
  (Minn. Ct. App. Sept. 23, 2019) (unpublished) ....................................................5, 6

*Florida v. United States*,
  660 F. Supp. 3d. 1239 (N.D. Fla. 2023)..................................................................11

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022) ......................................................................................8, 11

*Gonzalez v. ICE*,
  975 F.3d 788 (9th Cir. 2020)..................................................................................7

*Immigrant Defs. L. Ctr. v. Mayorkas*,
  No. 20-9893, 2023 WL 3149243 (C.D. Cal. Mar. 15, 2023)..................................11

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963) ................................................................. 9

*Lopez v. Sessions*,
  No. 18-4189, 2018 WL 2932726 (S.D.N.Y. June 12, 2018) ................................... 6

*Lunn v. Commonwealth*,
  477 Mass. 517 (2017) .......................................................... 6, 7

*Make the Rd. N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ................................................. 11

*McQuiggin v. Perkins*,
  569 U.S. 383 (2013) ........................................................... 10

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ............................................................ 9

*Nielsen v. Preap*,
  139 S. Ct. 954 (2019) ......................................................... 11

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................... 11

*Onosamba-Ohindo v. Searls*,
  No. 20-290, 2023 WL 4107978 (W.D.N.Y. June 21, 2023) .......................... 11

*People ex rel. Wells v. DeMarco*,
  88 N.Y.S.3d 518 (N.Y. App. Div. 2018) .......................................... 6

*Ramon v. Short*,
  399 Mont. 254 (2020) ......................................................... 5, 6

*Reno v. Am-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ............................................................ 8

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ............................................................ 9

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022)...............................................................9, 11

*United States v. Villanueva-Sotelo*,
   515 F.3d 1234 (D.C. Cir. 2008) ..............................................................10

**Statutes**

5 U.S.C. § 559 ....................................................................................................10

5 U.S.C. § 706(2).................................................................................................10

8 U.S.C. §1252(a)(1) ...........................................................................................10

8 U.S.C. § 1252(e) ...............................................................................................10

8 U.S.C. § 1252(e)(1) ..........................................................................................10

8 U.S.C. § 1252 (e)(1)(A).....................................................................................10

8 U.S.C. § 1252(f)(1)...........................................................3, 7, 8, 9, 10, 11

18 U.S.C. § 3606 ...................................................................................................5

18 U.S.C. § 4206 ...................................................................................................5

**Other Authorities**

Garner's Dictionary of Legal Usage 295 (3d ed. 2011)................................9

Order No. 2008-96, *Delegation of Authority to Exercise the Powers and Duties of
   Immigration Officers* (Feb. 12, 1996) .......................................................4

Order No. 2622-2002, *Delegation of Authority to the United States Marshals Service
   to Exercise the Powers and Duties of Immigration Officers* (Oct. 17, 2002)............4

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts

   179 (2012) ......................................................................................................9

**Rules & Regulations**

8 C.F.R. § 287.5.................................................................................6

8 C.F.R. § 287.8(c)(1) .........................................................................6

28 C.F.R. § 0.111.................................................................................5

28 C.F.R. § 0.111(a) ...............................................................3, 4, 5, 6

Fed. R. Crim. P. 4(c)(1)........................................................................5

Fed. R. Crim. P. 9(c)(1)(A); .................................................................5

Order No. 516-73, 38 Fed. Reg. 12917 (May 17, 1973)................................5

**Congressional Reports**

H.R. Rep. No. 104-469 (1996) ..............................................................9

# INTEREST OF AMICUS CURIAE[1]

The National Immigrant Justice Center (NIJC) is a nonprofit organization dedicated to ensuring human rights protections and access to justice for all immigrants, refugees, and asylum seekers.  With more than 2,000 *pro bono* partners from the nation's leading law firms, NIJC serves approximately 9,000 noncitizens annually.  NIJC's direct representation, as well as its immigration advisals to criminal defense attorneys, has informed its strategic policy and litigation work around the myriad legal and policy problems of entangling criminal law enforcement in civil immigration enforcement.

NIJC has an interest in the proper resolution of the issues presented in this case, which concerns the legal authority of the U.S. Marshals Service to arrest and detain persons suspected of civil immigration violations.  The scope of arrest and detention authority by non-immigration officers has been the subject of legal scrutiny for years.  Despite the very limited circumstances in which Congress has permitted non-immigration officers to make arrests and detain for civil immigration purposes, the Department of Homeland Security (DHS) and federal, state, and local law enforcement agencies have consistently flouted those limits, particularly through

---

[1] All parties have consented in writing to NIJC's *amicus* brief.  This brief was not written in whole or in part by counsel for any party, and no person or entity other than *amicus*, its members, and its counsel has made a monetary contribution to the preparation or submission of this brief.

immigration detainers.

NIJC has been and is counsel on a host of immigration detainer-related cases including *Jimenez Moreno v. Napolitano*, Case No. 11-5452 (N.D. Ill.) (class action); *Gonzalez v. ICE*, Case No. 13-4416 (C.D. Cal.) (class action); *Roy v. Los Angeles County Sheriff's Dep't*, Case No. 12-9012 (C.D. Cal.) (class action); *Lunn v. Commonwealth*, Case No. SJC-12276 (Mass.); *Gonzalez Goodman v. Arpaio*, Case No. 16-4388 (D. Ariz.); *Makowski v. United States*, Case No. 12- 5265 (N.D. Ill.); *Mayorov v. United States*, Case No. 13-5249 (N.D. Ill.); *Ocampo v. Harrington, et al.*, Case No. 13-3134 (C.D. Ill.).

NIJC has also submitted amicus briefs in numerous federal and state challenges to immigration detainers, including at the district court in this matter. *See N.S. v. Hughes*, Case No. 20-cv-101-RCL (D.D.C.); *Galarza v. Szalczyk*, Case No. 12-3991 (3d Cir.); *Sanchez Ochoa v. Campbell,* Case No. 17-35679 (9th Cir.); *People ex. rel. Wells v. DeMarco*, Case No. 2017–12806 (N.Y. App. Div.); *Cisneros v. Elder*, Case No. 2018-cv-30549 (Colo. Dist. Ct.); *Esparza v. Nobles Cnty.*, Case No. A18-2011 (Minn. Ct. App.); *Ramon v. Short*, Case No. DA 18-0661 (Mont.).

## INTRODUCTION

*Amicus* agrees with N.S. that the U.S. Marshals Service (USMS) has no authority to hold people for immigration enforcement purposes. *Amicus* submits this brief to further elaborate on two issues.

First, 28 C.F.R. § 0.111(a) confers no authority on USMS to execute U.S. Immigration and Customs Enforcement (ICE) detainers and administrative warrants. Section 0.111(a)'s text simply lists the USMS's general functions but grants no authority to execute any type of warrant. And even if Section 0.111(a) could confer independent authority to execute warrants, courts around the country that have addressed similar statutes and regulations have all held that such authority does not include executing ICE detainers and administrative warrants. Thus, there are multiple reasons why the regulation does not provide the relevant authority here, without the need to address any Fourth Amendment issues.

Second, in addition to the injunction the district court issued, vacatur and declaratory relief are available remedies, irrespective of 8 U.S.C. § 1252(f)(1). The district court had no reason to consider these other remedies, because Dixon never raised that statute as a defense, and thus forfeited and waived that argument on appeal. And as N.S. correctly explains, Dixon's § 1252(f)(1) arguments also fail on the merits. The injunction should therefore be upheld. But if the Court disagrees, the most it should do is remand for the district court to rule on the other potential remedies in the first instance.

## ARGUMENT

### I.   USMS lacks the authority to execute ICE detainers and administrative warrants.

The district court correctly held that no federal statute or regulation authorizes USMS to make civil immigration arrests based on an ICE detainer or administrative warrant. Joint Appendix (JA) 96-108. Dixon primarily relies on two executive delegations of authority from the Attorney General, but as N.S. explains, neither one provides the relevant authority. N.S. Br. 11-40; *see* JA 69-70 (Order No. 2008-96, *Delegation of Authority to Exercise the Powers and Duties of Immigration Officers* (Feb. 12, 1996)); JA 75-76 (Order No. 2622-2002, *Delegation of Authority to the United States Marshals Service to Exercise the Powers and Duties of Immigration Officers* (Oct. 17, 2002)).

Dixon also briefly invokes a regulation, 28 C.F.R. § 0.111(a), which mentions the USMS's authority to execute "warrants." But that regulation does not authorize USMS to execute ICE warrants for multiple reasons.

First, as Dixon acknowledges, the regulation can only apply here if the internal administrative orders issued by the Attorney General in 1996 or 2002 included a delegation that independently authorized immigration arrests. *See* Dixon Br. 36-37; N.S. Br. 39-40. As Dixon puts it, the regulation only comes into play "*[b]ecause* the delegations lawfully delegated authority to USMS to make immigration arrests." Dixon Br. 36 (emphasis added). Without a valid delegation, ICE warrants are

explicitly not directed to USMS officers, and therefore cannot be executed by them. This case therefore rises and falls with the delegations; the regulation has no independent effect.

That acknowledgment makes sense, because § 0.111(a) does not purport to confer any independent authority on the USMS. *See Ramon v. Short*, 399 Mont. 254, 275-76 (2020) (rejecting a claimed source of authority on similar grounds); *Esparza v. Nobles Cnty.*, No. A18-2011, 2019 WL 4594512, at *8-10 (Minn. Ct. App. Sept. 23, 2019) (unpublished) (same). Its text simply assigns control of USMS to a particular official, and then lists the USMS's general functions. *See* 28 C.F.R. § 0.111 ("The Director of the [USMS] shall direct and supervise all activities of the [USMS] including [a list of functions]."). The enacting text confirms that the regulation's purpose is to transfer supervisory authority over to the USMS, and never purports to grant the USMS any new authorities. *See* Order No. 516-73, 38 Fed. Reg. 12917 (May 17, 1973) (explaining new regulation "would make the [USMS] a separate unit" of DOJ and "set forth its functions"). Thus, any authority to execute a particular kind of warrant must come from some other source. *See, e.g.*, Fed. R. Crim. P. 4(c)(1), 9(c)(1)(A); 18 U.S.C. §§ 3606, 4206. And as explained, neither the delegations nor anything else confers authority to execute ICE administrative warrants.

Second, even if § 0.111(a) could confer independent authority, it does not

provide any authority to make arrests based on ICE warrants. Courts around the country have addressed statutes that provide state officers authority to execute certain kinds of warrants, and they have held that such authority does not include executing ICE warrants. These courts have held that—as N.S. explains, N.S. Br. 12-16—ICE's administrative warrants are only directed to trained federal immigration officers, and may not be executed by any other law enforcement officials. *See* 8 C.F.R. §§ 287.5, 287.8(c)(1); *Ramon*, 399 Mont. at 273; *People ex rel. Wells v. DeMarco*, 88 N.Y.S.3d 518, 528, 533 (N.Y. App. Div. 2018); *Lunn v. Commonwealth*, 477 Mass. 517, 534-37 (2017); *Esparza*, 2019 WL 4594512, at *8-10; *see also Lopez v. Sessions*, No. 18-4189, 2018 WL 2932726, *14 (S.D.N.Y. June 12, 2018) ("[ICE administrative warrants] are prepared for ICE agents, by ICE agents"). ICE warrants therefore do not fall under any non-immigration agency's general authority to execute warrants. In addition, courts have held that similar statutes and regulations provide authority to execute criminal warrants issued by judges or other neutral officers, not civil warrants issued by enforcement agents. *See Lunn*, 477 Mass. at 524-27, 524 n.17; *Wells*, 88 N.Y.S.3d at 528; *Esparza*, 2019 WL 4594512, at *6-7.

Finally, Dixon briefly cites several cases that address the validity of administrative warrants under the Fourth Amendment. Dixon Br. 39-41. This case, however, does not raise any Fourth Amendment issues. USMS can only make ICE detainer and warrant arrests if statutes and regulations confer that authority,

regardless of whether the Fourth Amendment imposes an independent bar. Thus, this is a case about the interpretation of the governing statutes, regulations, and orders— not about what the constitutional analysis would be had N.S. brought a constitutional claim. For this reason, the many courts that have rejected state officers' authority to make civil immigration arrests have done so without regard to the Fourth Amendment. *See, e.g., Lunn*, 477 Mass. at 519 n.2. Other courts have addressed a variety of Fourth Amendment issues that are not present here. *See, e.g.*, *Gonzalez v. ICE*, 975 F.3d 788, 824 (9th Cir. 2020) (holding that detainer arrests must be reviewed by a neutral party). Dixon's attempt to inject issues not presented in this case mixes apples with oranges.

## II.   N.S. Has Multiple Other Remedies Irrespective of 8 U.S.C. § 1252(f)(1).

The district court did not address other remedies available irrespective of 8 U.S.C. § 1252(f)(1), because Dixon never raised that statute as a defense. N.S. correctly argues that Dixon waived and forfeited his arguments related to § 1252(f)(1), because he did not raise them in the lower court, and that Dixon's § 1252(f)(1) arguments fail on the merits. N.S. Br. 40-51.[2] But even if the Court were to agree with Dixon's merits arguments, and even if it were to forgive the decision to never raise this issue in the district court, it should not decide the merits of the §

_____

[2] Because ICE's detainer authority falls outside the Immigration and Nationality Act (INA) provisions subject to § 1252(f)(1), that statute's limitations on injunctive relief is inapplicable to this case. *See Gonzalez*, 975 F.3d at 812-15.

1252(f)(1) argument.  Rather, because the district court was given no opportunity to consider this issue or what remedies might be most appropriate given § 1252(f)(1), the Court should remand for the district court to address these matters in the first instance.

That course would be particularly warranted because even where § 1252(f)(1) bars an injunction, vacatur and declaratory relief remain available—so once the issue is presented to the district court, Dixon's belated § 1252(f)(1) defense may end up being irrelevant.  Section 1252(f)(1)'s application to injunctions only is clear from its text.  It is titled "Limit on injunctive relief."  "By its plain terms, and even by its title," it "is nothing more or less than a limit on injunctive relief."  *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999); *see Biden v. Texas*, 597 U.S. 785, 786 (2022) (section 1252(f)'s "title . . . makes clear the narrowness of its scope"); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (noting that the heading of a statutory section can inform the statute's meaning).

Thus, as the Supreme Court has stated repeatedly, § 1252(f)(1) simply "prohibits lower courts from entering *injunctions*" against certain INA provisions.  *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (emphasis added).  Neither vacatur nor declaratory relief is an injunction.  An injunction is "a drastic and extraordinary remedy," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010), whereas vacatur is a "less drastic remedy," *id.*, which "neither compels nor

8

restrains" agency action, *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). And declaratory relief, unlike an injunction, "is not ultimately coercive," *Steffel v. Thompson*, 415 U.S. 452, 471 (1974), because it does not "interdict the operation" of agency action, *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) (cleaned up).

Moreover, "enjoin and restrain" under § 1252(f)(1) naturally refer to the two most common forms of injunctive relief—injunctions and restraining orders—which eliminates any surplusage.  In fact, "restrain and enjoin" are "common doublets," a two-word phrase that refers to a single concept—here, to injunctive relief.  Garner's Dictionary of Legal Usage 295-96 (3d ed. 2011); *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 179 (2012); *California v. Arizona*, 452 U.S. 431, 432 (1981) (using "enjoined and restrained" to describe an injunction).  This reading is confirmed twice over for § 1252(f)(1)—by the section's title, which refers only to injunctions; and by the legislative history, which refers only to injunctions in describing § 1252(f)(1).  H.R. Rep. No. 104-469, pt. 1, at 161 (1996).

Notably, when enacting § 1252(f)(1), Congress did not supersede the APA statutes that provide courts the authority to vacate unlawful policies.  Congress has specifically directed that a "[s]ubsequent statute may not be held to supersede" the judicial-review provisions of the APA "except to the extent that it does so *expressly*."

5 U.S.C. § 559 (emphasis added).  Congress enacted § 1252(f)(1) in 1996, decades

after the APA, but chose not to "expressly" divest courts with the power to enter

vacatur relief under 5 U.S.C. § 706(2).  *See McQuiggin v. Perkins*, 569 U. S. 383,

398 n.3 (2013) ("Congress legislates against the backdrop of existing law."); *cf.* 8

U.S.C. § 1252(a)(1) ("Judicial review of a final order [with some exceptions]. . . is

governed only by chapter 158 of Title 28," not the APA).

Neighboring provisions of the very same statute also confirm that Congress

explicitly included declaratory relief as available remedies under § 1252(f)(1).

Congress contemporaneously enacted § 1252(e), which prohibits a court from

entering "*declaratory*, injunctive, or other equitable relief."  8 U.S.C. § 1252

(e)(1)(A) (emphasis added).  In contrast, the adjacent § 1252(f)(1) uses only the terms

"enjoin or restrain" but makes no mention of declaratory relief.  Likewise, §

1252(e)(1) is titled "Limitations on relief," whereas § 1252(f)(1) is narrowly titled

"Limit on *Injunctive* Relief." (emphasis added).  "[W]hen Congress includes

particular language in one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts intentionally and purposely in

the disparate inclusion or exclusion."  *United States v. Villanueva-Sotelo*, 515 F.3d

1234, 1248 (D.C. Cir. 2008) (citation omitted).   This is "particularly true" where, as

here, the "subsections . . . were enacted as part of a unified overhaul of judicial

review procedures."  *Nken v. Holder*, 556 U.S. 418, 430–31 (2009).

Accordingly, every court to consider the issue has held that § 1252(f)(1) as interpreted by *Aleman Gonzalez* applies to neither vacatur nor to declaratory relief. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (vacatur); *E. Bay Sanctuary Covenant v. Biden*, No. 18-06810, 2023 WL 4729278, at *8 (N.D. Cal. July 25, 2023) (vacatur); *Florida v. United States*, 660 F. Supp. 3d. 1239, 1284-85(N.D. Fla. 2023) (vacatur); *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1045, 1048-49 (S.D. Cal. 2022) (vacatur and declaratory relief); *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020) (declaratory relief); *Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019) (declaratory relief); *Onosamba-Ohindo v. Searls*, No. 20-290, 2023 WL 4107978, at *3-4 (W.D.N.Y. June 21, 2023) (declaratory relief); *Immigrant Defs. L. Ctr. v. Mayorkas*, No. 20-9893, 2023 WL 3149243, at *12-15 (C.D. Cal. Mar. 15, 2023) (declaratory relief); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1168-69 (D. Ariz. 2022) (declaratory relief).

## CONCLUSION

The Court should affirm the permanent injunction. Alternatively, the Court should remand for the district court to consider other available remedies in the first instance.

Date: February 9, 2024                Respectfully submitted,

*s/* Keren Zwick
Keren Zwick
Mark Fleming
NATIONAL IMMIGRANT
JUSTICE CENTER
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: (312) 660-1364
F: (312) 660-1505
*kzwick@immigrantjustice.org*
*mfleming@immigrantjustice.org*

*Attorneys for amicus curiae*
*National Immigrant Justice Center*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitations of Rule 32 because it was prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman in 14-point type and complies with the length limitations of Rule 29(a)(5) because it contains 2,549 words.


Date: February 9, 2024             *s/* Keren Zwick
                                               Keren Zwick

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2024, I electronically filed the foregoing *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Date: February 9, 2024        *s/* Keren Zwick_____
                                          Keren Zwick