# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 26, 2024 Decided June 27, 2025

No. 21-5275

N.S., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
APPELLEE

v.

ROBERT A. DIXON, UNITED STATES MARSHAL, DISTRICT OF COLUMBIA (SUPERIOR COURT), IN HIS OFFICIAL CAPACITY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00101)

*Elissa P. Fudim*, Trial Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *William C. Peachey*, Director, and *Erez Reuveni*, Assistant Director. *Lauren C. Bingham*, Senior Litigation Counsel, entered an appearance.

*John Miano*, *Christopher J. Hajec*, and *Gina M. D'Andrea* were on the brief for *amicus curiae* Immigration Reform Law Institute in support of appellant.

*Daniel Gonen*, Attorney, Public Defender Service for the District of Columbia, argued the cause for appellee. With him on the brief were *Samia Fam* and *Alice Wang*, Attorneys.

*Keren Zwick* and *Mark Fleming* were on the brief for *amicus curiae* National Immigrant Justice Center in support of appellee.

Before: PILLARD and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

Opinion concurring in part and concurring in the judgment in part filed by *Circuit Judge* WALKER.

GINSBURG, *Senior Circuit Judge*: The United States Marshals Service for the Superior Court of the District of Columbia detained Appellant N.S. pursuant to an immigration detainer immediately after a Magistrate Judge had released him from criminal custody. N.S., on behalf of a proposed class, subsequently sued Robert A. Dixon, in his official capacity as U.S. Marshal for the Superior Court, challenging his authority to detain a person on the basis of an immigration detainer. The district court permanently enjoined Marshal Dixon and his agents, subordinates, and employees from "arresting and detaining criminal defendants in the Superior Court . . . for suspected civil immigration violations."

We hold the district court correctly determined the U.S. Marshals were not authorized to make civil immigration arrests because they had not undergone the training required by regulations governing civil immigration arrests. The class-wide relief granted by the district court, however, is barred by

statute. We therefore vacate the injunction and remand this case for the district court to enter an appropriate remedy.

## I. Background

N.S. was arrested for robbery and destruction of property, and arraigned before a Magistrate Judge the following day. The judge, declining to find N.S. would flee or pose a danger to any person in the community, ordered him released on his own recognizance. Before N.S. could leave the courthouse, however, the Marshals detained him on the basis, they said, of an "ICE hold," referring to a detainer issued by the Immigration and Customs Enforcement agency (ICE), a component of the Department of Homeland Security. N.S. immediately filed a class complaint alleging that, by making a civil immigration arrest, the Marshals had acted "in excess of their statutory authority" and therefore violated the Administrative Procedure Act (APA). 5 U.S.C. § 706(2)(c).

### A. Statutory and Administrative Background

The Secretary of Homeland Security and her delegates, including ICE agents, are by statute authorized to arrest and detain an alien with or without a warrant. 8 U.S.C. § 1226(a) ("On a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether" to remove the alien); *id.* § 1226(c) (authorizing the Secretary, "when [an alien charged with a listed crime] is released," to "take [that alien] into custody"); *id.* § 1357(a)(2) (authorizing the Secretary, without a warrant, to "arrest any alien . . . if he has reason to believe that the alien so arrested is in the United States in violation of" the immigration laws).[1] These

[1] The Homeland Security Act of 2002 (HSA) transferred the detention and removal program previously administered by the

authorities may be delegated broadly within the Department of Homeland Security (DHS) and the Department of Justice, pursuant to section 1103 of the Immigration and Nationality Act (INA), *id.* § 1103(a)(4).

To aid in enforcement of the immigration laws, certain listed classes of officers in the DHS may issue an ICE detainer to a federal, state, or local law enforcement agency. 8 C.F.R. § 287.7(b). An ICE detainer:

> serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

*Id.* § 287.7(a). Thus, an ICE detainer is a "request," not an order, for another law enforcement agency hold a particular alien.

With each detainer, an ICE policy requires that it issue an I-200 Warrant of Arrest (or an I-205 Warrant of Removal/Deportation, the latter of which is not involved in this case). ICE Policy 10074.2 ¶ 2.4 (2017), https://perma.cc/RFQ4-YHTY. An I-200 form must be signed by an authorized immigration officer who states that he or she has "probable cause to believe" the named alien is removable.

---

Attorney General and the Immigration and Naturalization Service (INS) to the Secretary of Homeland Security. 6 U.S.C. §§ 251(2), 252(a)(3), 271(b); *accord Clark v. Martinez*, 543 U.S. 371, 375 n.1 (2005).

Apdx. at 26 (sample Form I-200); 8 C.F.R. § 236.1(a); *id.* § 287.5(e)(2) (listing categories of officers so authorized). It is directed "To: Any immigration officer authorized [to serve an arrest warrant for immigration violations] pursuant to sections 236 and 287 of the Immigration and Nationality Act" and its implementing regulations. To execute an I-200 form, an immigration officer of a type listed in the regulation must have "successfully completed basic immigration law enforcement training." 8 C.F.R. § 287.5(e)(3); *see also id.* § 287.5(c)(1) (same required before making an arrest under 8 U.S.C. § 1357(a)(2)). ICE implemented the requirement that an I-200 form must accompany an ICE detainer, which it maintains is not legally required, after a district court held that detention pursuant to an ICE detainer alone constituted a warrantless arrest. ICE Policy 10074.2 ¶ 2.4 n.2 (citing *Moreno v. Napolitano*, 213 F. Supp. 3d 999 (N.D. Ill. 2016)).

At issue here are the Attorney General's orders delegating to the U.S. Marshals the authority to make civil immigration arrests. The Marshals are law enforcement officers in the Department of Justice who serve at the behest of both the judiciary and the Attorney General. Their "primary role and mission [is] to provide for the security [of,] and to obey, execute, and enforce all orders of," the federal courts. 28 U.S.C. § 566(a).[2]

---

[2] The Marshals "execute all lawful writs, process, and orders issued under the authority of the United States," 28 U.S.C. § 566(c), and "exercise such other functions as may be delegated by the Attorney General." *Id.* § 561(b). Regulations governing the Marshals describe their activities as including the "[e]xecution of Federal arrest warrants pursuant to rule 4 of the Federal Rules of Criminal Procedure . . . and Federal custodial and extradition warrants as directed." 28 C.F.R. § 0.111(a).

It is undisputed that the Marshals may not make civil immigration arrests without a proper delegation of authority and a warrant. In 1996, the Deputy Attorney General delegated to the Marshals the authority "to perform and exercise the powers and duties of Immigration Officers for the purpose of . . . maintaining custody of aliens in the custody of the Attorney General." As the legal basis for the 1996 Order, the Deputy Attorney General cited 8 U.S.C. § 1103 and 28 U.S.C. §§ 509, 510, and 566. As mentioned above, § 1103 authorizes the delegation of the powers in the INA and, at the time of the 1996 Order, vested that authority in the Attorney General. 8 U.S.C. § 1103(a) (1994). Section 509 vests in the Attorney General, with a few exceptions not relevant here, "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice." Section 510 authorizes the Attorney General in turn to "authoriz[e] the performance by any other officer, employee, or agency of the Department of Justice . . . of any function of the Attorney General."

In 2002, Attorney General Ashcroft issued an order authorizing the Marshals "to exercise the functions of immigration officers for the purpose of . . . apprehending . . . any alien" who is in violation of the United States' immigration laws. When the 2002 Order was sent to the Attorney General for his signature, it was accompanied by an internal memorandum (the "Dinh Memorandum") explaining that the Order "clarified" the 1996 Order "to ensure that sufficient apprehension support is available when necessary to implement program initiatives such as the National Security Entry - Exit Registration System." Unlike the 1996 Order, however, the 2002 Order relied only upon §§ 509 and 510 as its legal bases.

**B. Procedural History**

The district court certified the proposed class and granted N.S.'s request for an injunction permanently prohibiting Marshal Dixon and his agents "from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations."[3] In its initial determination to enter a preliminary injunction, the court had rejected a variety of arguments Marshal Dixon made to justify the arrest of N.S., and based its decision upon three grounds relevant to this appeal. *N.S. v. Hughes* (*Dixon I*), 335 F.R.D. 337 (D.D.C. 2020).

First, the district court held an ICE detainer together with an I-200 form does not authorize the Marshals to make a civil immigration arrest: An ICE detainer "do[es] not confer upon the recipient agency the legal authority to make an arrest," and an I-200 form "is not a true warrant, as it is not issued by an independent judicial officer; instead, it is issued by an ICE agent, causing concerns about a lack of neutrality." *Id.* at 346–47.

Second, the district court held the INA and its implementing regulations "make clear that only trained, certified immigration officers have the authority to make civil immigration arrests;" the Marshals had not received that training. *Id.* at 347–48 (citing 8 U.S.C. § 1357(a) & 8 C.F.R. § 287.7(b)); *id.* at 348 n.6 (citing 8 C.F.R. § 287.5(e)(3)).

---

[3] The class was defined as "All indigent criminal defendants in the Superior Court for the District of Columbia: (1) who were, are, or will be detained by officers of the United States Marshals Service for suspected civil immigration violations, and (2) as to whom Immigration and Customs Enforcement has not effectuated a warrant of removal/deportation (a form I-205) and/or has not obtained an order of deportation or removal."

Further, the court noted that the implementing regulations say "[o]nly designated immigration officers are authorized to make an arrest," and that the Marshals are not immigration officers. *Id.* at 348 n.6 (citing 8 C.F.R. §§ 287.8(c)(1), 236.1(b)(1)).

Third, the district court held 28 C.F.R. § 0.111(a) — which describes the functions of the Marshals to include the execution of custodial warrants — did not provide the authority to make a civil immigration arrest. *Id.* at 349–50. In addition, relying upon its earlier analysis, the court concluded the Marshals could not execute an I-200 form — which, again, is issued to "[a]ny immigration officer authorized pursuant to" specific sections of the INA — because the Marshals "are not immigration officers" and "are certainly not the kind of specially trained immigration offers specifically authorized under the applicable provisions." *Id.*

Marshal Dixon filed a Motion for Reconsideration, for the first time arguing the 2002 Order gave the Marshals the authority to make civil immigration arrests. In response, N.S. argued the 2002 Order had been overtaken by the Homeland Security Act (HSA); the Order should have been promulgated through notice and comment rulemaking; and the Order did not invoke any proper legal basis to support its delegation of authority to the Marshals.

The district court rejected the Marshal's motion. N.*S. v. Hughes* (*Dixon II*), No. 1:20-cv-101, 2020 WL 4260739 (D.D.C. July 24, 2020). The court first held the 2002 Order was not a valid basis for reconsideration because Marshal Dixon should have known about and raised the Order in his earlier brief. *Id.* at *2. It then rejected N.S.'s first two arguments. As to the HSA, the district court held the 2002 Order was a completed administrative action that survived because of the savings clause in the HSA, 6 U.S.C. § 552(a)(1). *Id.* at *3–4.

As to the notice and comment requirement, the district court held that process was unnecessary because the 2002 Order came within the exception to APA rulemaking for procedural rules. *Id.* at *4–5.

The court, however, agreed with N.S. that the 2002 Order lacked sufficient legal support for its purported delegation of authority. *Id.* at *5–*6. It held the Attorney General could not rely upon the general delegation authority of 28 U.S.C. §§ 509 and 510 because those provisions were not part of the INA, which is a comprehensive and complete federal statutory scheme for regulation of immigration and naturalization. *Id.* at *5 (citing *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) & *Elkins v. Moreno*, 435 U.S. 647, 666 (1978)). The district court then held Marshal Dixon could not now rely upon 8 U.S.C. § 1103 — a more specific legal authority in the INA that would have provided the Attorney General with the requisite authority — to justify the Order on the ground that doing so would violate the principle of *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947), that a court must "judge the propriety of an [agency] action solely by the grounds invoked by the agency" when it acted. *Id.* at 196; *Dixon II*, 2020 WL 4260739, at *6.

The district court thereafter granted N.S.'s motion for summary judgment. *N.S. v. Dixon* (*Dixon III*), No. 1:20-cv-101, 2021 WL 4622490 (D.D.C. Oct. 7, 2021). The court explained that the 1996 Order — which Marshal Dixon had not raised before — could not support the Marshals' authority to make a civil immigration arrest: Despite invoking the relevant legal authority (8 U.S.C. § 1103), the 1996 Order to the Marshals to "maintain[] custody of aliens in the custody of the Attorney General" did not apply here because N.S. was not in the custody of the Attorney General when the Marshals detained him. *Id.* at *5. The court also rejected Marshal Dixon's attempt

to rectify the 2002 Order (which, per the court, was based upon an inapposite legal authority) by linking it, via the Dinh Memorandum, to the 1996 Order (which had relied upon the proper legal authority), saying the Dinh Memorandum "hardly provided a reasonable path" from the 1996 Order's invocation of § 1103" to the 2002 Order. *Id.* at *7 (cleaned up).

The district court then determined that entry of a permanent injunction was appropriate because N.S. had suffered an irreparable injury and the class was likely to suffer the same irreparable harm, the remedies available at law were inadequate, and the balance of equities favored the class. *Id.* at *7–*8. Marshal Dixon appealed with respect both to his authority and to the issuance of class-wide relief.

On January 22, 2025, after oral argument and a change of presidential administration, the Acting Secretary of Homeland Security issued a new order relating to the authority of the Marshals to make civil immigration arrests (the 2025 Order). Letter from Elissa P. Fudim to Clerk of Court, Feb. 3, 2025, pursuant to Fed. R. App. P. 28(j). Citing 8 U.S.C. § 1103(a)(4) and (6), the Acting Secretary purported to authorize the Marshals to "perform the following functions of an immigration officer granted to the [DHS] by [the INA] and confer upon them the authority to do the same: . . . apprehending, any alien who is in the United States in violation of [the INA] or regulations issued thereunder."

## II. Analysis

"We review the district court's conclusions of law de novo." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1110 (D.C. Cir. 2009). We review the district court's decision to issue an injunction for abuse of discretion. *Id.*

### A. The Marshals' Authority to Arrest N.S.

#### 1. The Delegations to the Marshals

In his briefs on appeal Marshal Dixon contended, inter alia, that contrary to the district court, the 2002 Order on its own, and certainly when coupled with the 1996 Order, constituted a proper delegation of authority: Because we rest our holding on the narrower ground that the Marshals lack the requisite training, we may assume without deciding that the Orders constitute valid delegations of authority to the Marshals and that those delegations survive the passage of the HSA.[4]

#### 2. The Training Requirement

Marshal Dixon further challenges the district court's holdings that the Marshals are not immigration officers and that, even if the relevant regulation could be expanded to include the Marshals, they would still have to receive training prior to making a civil immigration arrest. In this regard, recall

---

[4] In a post-argument letter to the court, Marshal Dixon now argues the issuance of the 2025 Order, which expressly invokes 8 U.S.C. § 1103(a)(4), moots N.S.'s argument that the 1996 and 2002 Orders did not properly give the Marshals authority to make civil immigration arrests. Marshal Dixon is correct that, for arrests made on or after January 22, 2025, the 2025 Order rests upon the proper legal authority. Indeed, the 2025 Order invokes precisely the legal authority N.S. argues the 2002 Order should have invoked. We also agree with Marshal Dixon that, for arrests made on or after January 22, 2025, the 2025 Order moots N.S.'s contention that the HSA or its implementing regulations had vitiated any earlier delegation. But we need not address Marshal Dixon's arguments regarding the legal effect of the 2025 Order on pre-order conduct because we assume without deciding that the earlier Orders were legally supported.

that under INA regulations (a) an I-200 form "may be served only by those immigration officers listed in § 287.5(e)(3)," 8 C.F.R. § 236.1(b)(1), and (b) that listed officers must have completed the required training before serving an I-200 form. *Id.* § 287.5(e)(3); *see also id.* § 287.5(c)(1) (same required before making an arrest under 8 U.S.C. § 1357(a)(2)). The Marshals are not listed in those regulations.

The 2025 order authorizes the Marshals to "perform the following functions of an immigration officer granted to the [DHS] by [the INA:] . . . apprehending any alien who is in the United States in violation of [the INA] or regulations issued thereunder." (Cleaned up.) Both this Order and the 2002 Order authorize the Marshals to discharge the "functions of an immigration officer" for the purpose of making a civil immigration arrest. We therefore do not view the 2002 and 2025 Orders as meaningfully different with respect to the requirement to undergo training prior to exercising that arrest authority.

Assuming the list of officers authorized in § 287.5(e)(3) to make civil immigration arrests may be thusly expanded without amending the regulation, as Marshal Dixon claims, the 2025 Order does not relieve the Marshals of the pre-existing training requirement. Rather, it simply authorizes the Marshals to "perform the . . . functions of an immigration officer." Arresting aliens is not a function of an immigration officer who has not received the relevant training. We therefore agree with the district court that the Marshals were not authorized to arrest N.S.

Marshal Dixon nonetheless argues that because the Congress has defined an immigration officer to include any employee "designated . . . individually or by regulation, to perform the functions of an immigration officer," 8 U.S.C.

§ 1101(a)(18) (2002), and because § 287.5 "sets forth a training requirement for those designated by *regulation*," the training requirement does not apply to immigration officers designated individually. Dixon Reply Br. 21. Again, however, the Order delegates only the "functions of an immigration officer." Those functions do not include executing I-200 forms before having completed training. Marshal Dixon offers no authority for the proposition that a delegation order authorizing individuals to execute a particular function are thereby excused from the prerequisites to engaging in that function.

Nor do we think the other training requirement to which Marshal Dixon points informs the requirements for the Marshals. The INA provision allowing State and local government employees to act as immigration officers explicitly requires training as a prerequisite. 8 U.S.C. § 1357(g)(2). Marshal Dixon argues that the lack of a similar requirement in the definition of "immigration officer," *see* § 1101(a)(18), suggests the Congress "did not view such training as essential for federal immigration officers." Dixon Reply Br. 21. Section 1357(g)(2), though, addresses a contract-like agreement with State law enforcement agencies, which are not under the control of the federal government, whereas the definition of "immigration officer" in § 1101(a)(18), applies only to federal officials and is located in a provision defining terms for the entirety of the INA. The requirements of § 1357(g)(2) apply to a different situation and therefore have no bearing on the meaning of the 2025 Order.

In sum, the 2025 Order effects a valid delegation of authority for arrests that are made on or after January 22, 2025 but does not relieve the Marshals of the requirement to undergo training prior to making a civil immigration arrest. As a result, the Marshals who detained N.S. were not authorized to make a civil immigration arrest. We need not, therefore, address

Marshal Dixon's argument that the 2025 Order "delegated [sic] USMS as Immigration officers," Dixon Br. 36, and, consequently, the I-200 form they had was a "Federal custodial . . . warrant" that the Marshals were authorized to serve.[5] 28 C.F.R. § 0.111(a). Nor need we address N.S.'s argument that the delegation of authority to the Marshals is invalid because it was done without notice and comment rulemaking.

### B. The Class-Wide Injunction

Because the arrest of N.S. was not valid, we must go on to address Marshal Dixon's challenge to the breadth of the injunction the court issued. Marshal Dixon argues for the first time on appeal that 8 U.S.C. § 1252(f)(1) barred the district court from issuing a class-wide injunction. Section 1252(f)(1) provides:

> Regardless of the nature of the action . . . no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [§§ 1221–1232] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Marshal Dixon contends the district court's class-wide injunction "enjoin[s] or restrain[s] the operation of" two provisions, both of which authorize the arrest and detention of removable aliens, to wit, 8 U.S.C. §§ 1226 and 1231. N.S. responds first that the statutory bar is not jurisdictional and therefore was forfeited or waived because Marshal Dixon did not raise it in the district court, and second that, in any event,

---

[5] On appeal, Marshal Dixon does not advance his argument from the proceedings before district court that § 0.111(a) authorizes the Marshals to make civil immigration arrests independent of a proper delegation of authority.

the injunction does not affect the provisions covered by § 1252(f)(1).

### 1. Whether Section 1252(f)(1) Has Been Forfeited or Waived

Per N.S., the Supreme Court's decision in *Biden v. Texas*, 597 U.S. 785 (2022), holds § 1252(f)(1) is a non-jurisdictional defense and hence may be forfeited or waived if not timely raised. Marshal Dixon argues § 1252(f)(1) is "a jurisdictional limitation on a court's power [that] can never be forfeited or waived." Dixon Reply Br. 2 (cleaned up).

We need not decide now whether § 1252(f)(1) is non-jurisdictional and therefore subject to being waived or forfeited because any waiver or forfeiture should be overlooked in this case. *Cf. Young v. SEC*, 956 F.3d 650, 655 (D.C. Cir. 2020) (declining to decide whether a filing deadline is jurisdictional because the petitioner failed to establish an entitlement to equitable tolling). A court may overlook a waiver or forfeiture when there has been an intervening change in the law. *See, e.g.*, *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 (D.C. Cir. 1992); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1119 (9th Cir. 2022). That is the case here.

During the district court proceedings in 2020 and 2021, circuit law seemed to foreclose the argument that § 1252(f)(1) bars the district court's injunction. *See Grace v. Barr*, 965 F.3d 883, 907 (2020) (explaining that § 1252(f)(1) "refers only to 'the operation of the provisions'—i.e., the statutory provisions themselves, and thus places no restriction on the district court's authority to enjoin *agency action* found to be unlawful"). Only after the proceedings in the district court did the Supreme Court hold § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise

carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The Supreme Court's interpretation of this statute to bar an injunction against the "carry[ing] out" of the covered provisions is broader than was our interpretation in *Grace*. Because the district court's injunction in this case seemed not to have been barred under our prior interpretation of § 1252(f)(1), Marshal Dixon's failure to object to it prior to the decision in *Aleman Gonzalez* is excusable. The resulting change in circuit law presents an exceptional circumstance that counsels rejecting N.S.'s waiver and forfeiture arguments.

### 2. Whether The Permanent Injunction Implicates § 1252(f)(1)

Does the district court's injunction "restrain the operation" of the provisions of the INA specified in § 1252(f)(1), as interpreted by the Supreme Court in *Aleman Gonzalez*? N.S. argues § 1252(f)(1) does not apply to this injunction for two reasons. First, he contends the enjoined actions are governed by § 1357, which relates to warrantless arrests and is not among the provisions to which § 1252(f)(1) applies. Second, he argues that because the injunction applies only to the Marshals, and not DHS or the entire government, its limited effect does not amount to restraining the "operation of" the specified provisions. For the reasons explained below, neither argument persuades.

As described in the prior section, *Aleman Gonzalez* holds an injunction implicates the provisions covered in § 1252(f)(1) insofar as it would affect the ability of federal officials to "enforce, implement, or otherwise carry out the specified statutory provisions." 596 U.S. at 550. Therefore, the remedial bar of §1252(f)(1) is not limited to the covered provisions "as *properly* interpreted." 596 U.S. at 552–54 (explaining that this

reading would not be a natural interpretation of the term "operation," as it "is very common to refer to the 'unlawful' or 'improper' operation of whatever it is that is being operated"). That limitation would not comport with the provision's prefatory clause, which specifies that the bar applies "[r]egardless of the nature of the action or claim." 8 U.S.C. § 1252(f)(1); *see Aleman Gonzalez*, 596 U.S. at 553. It would also make the effect of § 1252(f)(1) contingent upon the merits of the claim that the Government acted unlawfully. *Id.* at 554. In sum, "§ 1252(f)(1) has the same force even when the National Government allegedly enforces the relevant statutes unlawfully." *Arizona v. Biden*, 40 F.4th 375, 394 (6th Cir. 2022) (Sutton, C.J., concurring).

An injunction that restrains the Government from carrying out an arrest and detention of a criminal defendant pursuant to an I-200 form clearly affects provisions to which § 1252(f)(1) applies. In particular, 8 C.F.R. Part 236 — which encompasses the regulation providing that only those classes of officers listed in 8 C.F.R. § 287.5(e)(3) may serve an I-200 form, *id.* § 236.1(b) — claims its authority in part from 8 U.S.C. §§ 1226 and 1231, both of which are covered by § 1252(f)(1). More specifically, § 1226(a) addresses a civil immigration arrest made pursuant to a warrant. Section 1226(c), entitled "Detention of criminal aliens," additionally authorizes the Secretary, "when [an alien charged with a listed crime] is released," to "take [that alien] into custody." Moreover, ICE's policy to accompany an ICE detainer with an I-200 form, even if not uniformly followed, suggests an arrest pursuant to an ICE detainer generally is not without the type of warrant required by § 1226(a). *See* ICE Policy 10074.2 ¶ 2.4 ("[A]s a matter of policy, all detainers issued by ICE must be accompanied by either: (1) a properly completed Form I-200 . . . or (2) a properly completed Form I-205").

As a result, we conclude the injunction in this case implicates provisions to which § 1252(f)(1) applies: It prevents the Marshals from arresting and detaining any criminal defendant in the D.C. Superior Court for a suspected civil immigration violation, including arrests made pursuant either to an ICE detainer and I-200 form or pursuant to an ICE detainer alone.[6]

We disagree with N.S.'s argument that the injunction has only a collateral effect on the provisions covered by § 1252(f)(1) because it restrains only the Marshals from making a civil immigration arrest. By preventing Marshal Dixon and his agents from making civil immigration arrests, the injunction directly and substantially restricts the ability of those federal officials to "carry out" provisions covered by § 1252(f)(1) and pro tanto frustrates enforcement of the law. *Aleman Gonzalez*, 596 U.S. at 550 ("[T]he 'operation of the provisions' is a reference 'not just to the statute itself but to the way that [it is] being carried out'").

N.S. further contends the Marshals arrested him without a warrant, and therefore the injunction implicates only § 1357 — the provision governing warrantless arrests — and not § 1252(f)(1). N.S. may be correct that he was not served with an I-200 form at the appropriate time and place. *See* Dixon Reply Br. Ex. A (showing N.S.'s I-200 Form was served in Lorton, Virginia, not at the D.C. Superior Court). He may also be correct that despite ICE policy there are multiple instances

---

[6] *See* Oral Arg. Tr. 37:21–38:1 ("JUDGE WALKER: Does the district court's injunction cover class members for whom there are I-200 warrants that [the] Marshal Service was aware of, that were served properly . . . [with] all the t's crossed and all the i's dotted? MR. GONEN [for N.S.]: Yes, it does").

of the Marshals making civil immigration arrests without an I-200 form. All that is beside the point.

What matters is that the district court enjoined the Marshals from arresting and detaining any criminal defendant suspected of a civil immigration violation, which includes arrests made with a warrant issued pursuant to § 1226(a) and the detention of any alien charged with any of the crimes listed in § 1226(c). Notwithstanding the court's conclusion in Part II.A that the Marshals were not lawfully able to execute a civil immigration arrest for want of the requisite training, the district court was barred by § 1252(f)(1) from entering a class-wide injunction preventing such arrests and detention. *Aleman Gonzalez*, 596 U.S. at 552–53.

## III. Conclusion

For the foregoing reasons, we vacate the district court's order enjoining Marshal Dixon and his agents, subordinates, and employees "from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations." We remand this case to the district court to reconsider the appropriate remedy.[7]

*So ordered.*

---

[7] This court has stated, and Marshal Dixon does not contest, that § 1252(f)(1) "does not proscribe issuance of a declaratory judgment[.]" *Make the Rd. New York v. Wolf*, 962 F.3d 612, 635 (2020); *accord Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (plurality opinion) (explaining "whether the [district] court had jurisdiction to enter . . . [a class-wide] injunction is irrelevant because [it] had jurisdiction to entertain the plaintiffs' request for declaratory relief" (cleaned

up)). At least one court of appeals has held § 1252(f)(1) does not bar vacatur under the APA. *See Texas v. United States*, 40 F.4th 205, 219–20 (5th Cir. 2022).

WALKER, *Circuit Judge*, concurring in Part II.B and concurring in the judgment to vacate the injunction and remand to the district court:

N.S. brought a class action against the United States Marshal for the Superior Court, alleging that the Marshals lack authority to detain individuals for civil immigration violations. The district court agreed and entered a permanent injunction.[1]

In Part II.B, the Court holds that 8 U.S.C. § 1252(f)(1) bars the district court's injunction. I join that part of the Court's opinion. It fully explains the Court's decision to vacate the injunction and remand — the relief requested on appeal.[2]

Unlike the majority, I would not narrow the remand to reconsideration of the appropriate remedy. Under my approach, if the district court grants new remedies on remand, the Government would be able to appeal the district court's decision with regard to both the merits and the new remedy.

If that day comes, it might then be necessary for this court to decide the merits questions discussed in Part II.A. But that day may never come. For one thing, the Marshals might elect to provide the training that N.S. argues is required, which might moot any not-already-moot claims related to the regulations about training.

---

[1] *N.S. v. Dixon*, No. 1:20-cv-101-RCL, 2021 WL 4622490, at *1 (D.D.C. Oct. 7, 2021) (enjoining the Marshals from "arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations").

[2] *See* Appellant Br. 45 ("The Court should overturn the district court's permanent injunction.").